IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ROBERT GREEN, individually, and on behalf of all others similarly situated, ) ) ) | |
| Plaintiff, ) ) | |
| v. ) ) | Case No. 08-CV-1684 |
| CITIZENS FINANCIAL GROUP, INC., a foreign corporation, and CHARTER ONE, ) ) ) ) | Judge Gottschall Magistrate Judge Nolan |
| Defendants. ) | |

**MEMORANDUM IN SUPPORT OF CITIZENS FINANCIAL GROUP, INC. AND CHARTER ONE BANK'S FED. R. CIV. P. 12(b)(6) MOTION TO DISMISS**

Plaintiff Robert Green has filed this action complaining about the collection of gift card fees he voluntarily agreed to pay—fees that are permissible under federal law. In 2004, plaintiff was given a $30 gift card that had been issued by Charter One Bank, National Association ("Charter One").[1] The written cardholder agreement, which governed the use of the card, clearly discloses Charter One's fees for inactive gift cards. Plaintiff accepted the terms and conditions and voluntarily used the card. But he is now suing because Charter One reduced the balance of his card by collecting the very inactivity fees that Charter One was entitled to collect and he agreed to pay under the agreement. In addition to being illogical, the complaint suffers from myriad legal deficiencies.

---

[1] Although the complaint lists the defendants as Citizens Financial Group, Inc., and Charter One, the name of the entity that issued the gift card was Charter One Bank, National Association. (*See* Compl. ¶ 5 ("[t]his card is the property of Charter One Bank, N.A.").) Accordingly, for the purposes of this action, the proper name of the defendant is Charter One Bank, National Association. For the Court's reference, as of September 1, 2007, Charter One Bank, National Association, merged into RBS Citizens, National Association, and therefore no longer exists as an independent legal entity.

As a threshold matter, the Court should dismiss the claims against Citizens Financial Group, Inc. ("CFG") because those claims are based solely and improperly on the fact that CFG is Charter One's parent company. In addition, the claims against both CFG and Charter One should be dismissed because Charter One is a national bank and the National Bank Act permits national banks to impose inactivity fees on gift cards. As a result, the doctrine of federal preemption precludes plaintiff from bringing state law claims challenging the legality of collecting such fees.

Even if the National Bank Act did not preempt plaintiff's state law claims (which it clearly does), the Court should dismiss the complaint because plaintiff's relationship with Charter One was governed by the parties' written contract that expressly permitted Charter One to impose inactivity fees on its gift cards. Finally, to the extent they are discernable from the vague complaint, plaintiff's state law tort claims fail to state a claim upon which relief can be granted.

## BACKGROUND

Plaintiff's claims arise from his receipt of a Charter One gift card and his purported belief that defendants acted unlawfully when Charter One reduced the balance on his gift card after he neglected to use the card for more than six months. Specifically, plaintiff alleges that during the 2004 holiday season, a relative sent him a pre-paid $30 Charter One gift card. (Compl. ¶¶ 4, 6.) Upon receipt of the gift card, plaintiff signed the back of the card. (*Id.* at ¶ 5.) The back of the gift card states in pertinent part:

> By using the card, the holder agrees to all terms under which it was issued and any amendments thereto.

(*Id.*) On December 20, 2005, plaintiff used the gift card to make a $13.17 purchase. (*Id.* at ¶ 7.) On December 21, 2005, plaintiff allegedly called the toll free number on the gift card to find out

the remaining balance on the card after he unsuccessfully attempted to make an additional $15.00 purchase with the card. (*Id.* at ¶ 8.) Plaintiff alleges that he was told that the remaining balance on the card was $4.33. (*Id.* at ¶¶ 8–9.) The plaintiff further alleges that his gift card expired on December 31, 2005. (*Id.* at ¶ 11.)

Nearly two years later, on December 11, 2007, plaintiff filed the instant action in the Chancery Division of the Circuit Court of Cook County, Illinois on behalf of himself and:

> [a]ny and all persons and entities who received a gift card from either Defendant to be used for future purchases which cash was wrongfully converted, taken and commingled into the general funds of the Defendants and then used by them for their own benefit.

(*Id.* at ¶ 17.) Plaintiff appears to claim that defendants were unjustly enriched when they, according to him, improperly collected inactivity fees and, upon expiration of the card, converted the remaining balance on his gift card to their own use.[2] (*Id.* at ¶¶ 11, 20.) Plaintiff amended the complaint on December 19, 2007 and served the amended complaint on each defendant on February 22, 2008.[3] Pursuant to 28 U.S.C. § 1332 and the Class Action Fairness Act, defendants removed the action to this Court on March 21, 2008.

## ARGUMENT

I.  **THE COURT SHOULD DISMISS PLAINTIFF'S CLAIMS AGAINST CFG BECAUSE THE COMPLAINT FAILS TO ALLEGE THAT CFG PLAYED ANY ROLE IN THE SALE OF THE GIFT CARD AT ISSUE.**

The complaint does not include any allegations to support a claim against CFG. For example, the complaint does not state that CFG sold or issued the gift card at issue, or that CFG imposed any of the fees about which plaintiff complains. In fact, it appears that plaintiff

---

[2]   As discussed further below, defendants and this Court are left to surmise the specific cause(s) of action that plaintiff has asserted because the complaint fails to directly identify them.

[3]   Plaintiff never served the original complaint on either CFG or Charter One.

3

named CFG as a defendant in this action simply because "Charter One Bank is part of Citizens Financial Group." (Compl. ¶ 4.)

Even reading the complaint in the light most favorable to plaintiff and taking into account the liberal notice-pleading requirements of the Federal Rules of Civil Procedure, the complaint fails to state a claim against CFG. "It is a general principle of corporate law . . . that a parent corporation . . . is not liable for the acts of its subsidiaries." *United States v. Bestfoods*, 524 U.S. 51, 61 (1998); *see also DeJohn v. The .TV Corp. Int'l*, 245 F. Supp. 2d 913, 925 (N.D. Ill. 2003) (dismissing plaintiff's claims against the parent corporation where the complaint did not contain any allegations that would subject the company to liability, but rather merely alleged that it was the parent of the subsidiary); *Guining Li v. Citigroup, Inc.*, No. 99-C-635-C, 2000 WL 34237511, at *2 (W.D. Wis. July 26, 2000) (holding that a defendant bank holding company was entitled to summary judgment where the plaintiff's sole claim against the holding company was based on its ownership of the bank and the plaintiff did not offer any evidence to support a claim for piercing the corporate veil); *Ascension Tech. Corp. v. McDonald Invs., Inc.*, 327 F. Supp. 2d 271, 278 (D. Vt. 2003) (dismissing plaintiff's claims against a parent bank holding company because plaintiff's complaint did not allege any assertions of direct liability or facts that would warrant piercing the subsidiary's corporate veil).

Here, the complaint does not allege any actionable facts with respect to CFG: plaintiff has merely sued CFG based solely on its status as the parent corporation of Charter One. This does not give rise, however, to a cause of action. Nor does the complaint purport to assert a basis for piercing Charter One's corporate veil, which is not surprising because there exists no good faith basis to so allege. Thus, the Court should dismiss plaintiff's claim(s) against CFG.

4

**II.      THE COMPLAINT FAILS TO STATE A CLAIM BECAUSE THE NATIONAL BANK ACT PERMITS CHARTER ONE TO COLLECT INACTIVITY FEES.**

The National Bank Act establishes nationally chartered banks and vests those banks with certain powers, including "all such incidental powers as shall be necessary to carry on the business of banking." 12 U.S.C. § 24. Charter One is a national bank and therefore its business activities are controlled by the National Bank Act and regulations issued thereunder by the Office of the Comptroller of the Currency ("OCC"). *See Charter One Bank v. Tutin*, No. 88081, 2007 WL 701056, at * 1 (Ohio Ct. App. Mar. 8, 2007) (noting that on March 13, 2002, Charter One Bank, F.S.B. converted to a national bank and assumed the name Charter One Bank, N.A.); 12 U.S.C. § 1 *et seq.*

The OCC authorizes national banks to offer electronic stored value systems—or gift cards. 12 C.F.R. § 7.5002(a)(3). Furthermore, as other courts have noted, the OCC's regulations permit national banks to collect inactivity fees on gift cards. *SPGGC, LLC v. Ayotte*, 488 F.3d 525, 531 (1st Cir. 2007) ("Furthermore, the OCC has issued regulations that require the disclosure of expiration dates and administrative fees on gift cards, which indicates that the OCC expects that cards might carry expiration dates and fees, and that they are not prohibited from doing so."); *SPGGC, LLC v. Blumenthal*, 505 F.3d 183, 189 (2d Cir. 2007) (*citing* 12 C.F.R. § 7.4002(a) O.C.C. Bull. No. 96-48, Stored Value Card Systems (Sept. 10, 1996) ("OCC regulations appear to permit, or at least not to prohibit, the attachment of expiration dates and dormancy or inactivity fees to such cards.")). Accordingly, because Charter One is a national bank, and Charter One properly disclosed its collection of inactivity fees, federal law permits Charter One to collect inactivity fees on its gift cards.

Moreover, the National Bank Act preempts (or trumps) any state law to the contrary. As the Supreme Court has repeatedly made clear, the National Bank Act's control over

national banks "shields national banking from unduly burdensome and duplicative state regulation." *Watters v. Wachovia Bank, N.A.,* 127 S. Ct. 1559, 1566–67 (2007) (*citing Beneficial Nat'l Bank v. Anderson,* 539 U.S. 1, 10 (2003)). National banks are subject to state laws only to the extent that state law does not conflict "with the letter or the general purposes of the [National Bank Act]." *Id.* at 1567; *see also Charter One Bank*, 2007 WL 701056, at *4 ("It is well settled that federal law preempts state regulation of federal financial institutions.").

Here, because the National Bank Act and the regulations issued thereunder authorize Charter One to collect inactivity fees on gift cards that it issues, the National Bank Act preempts any state law to the contrary. This is precisely what at least two Courts of Appeal have held in virtually identical situations as the present case. In *Ayotte*, a retail center operator brought a declaratory judgment action against the New Hampshire attorney general claiming that the collection of inactivity fees on gift cards did not violate state law. *Ayotte*, 488 F.3d at 528. The First Circuit disagreed. *Id.* at 534. Specifically, the court reasoned that the National Bank Act authorized the retail center operator, as a third party agent to a national bank, to issue gift cards with inactivity fees and that a New Hampshire law prohibiting the collection of such fees significantly interfered with that ability. *Id.* at 533. Accordingly, the court held that the National Bank Act preempted New Hampshire law and affirmed the trial court's award of summary judgment for the retail center operator. *Id. See also Blumenthal*, 505 F.3d at 189 (recognizing that the National Bank Act, as applied to a national bank, preempts state laws that prohibit the collection of inactivity fees on gift cards).

The same result occurs here. A review of plaintiff's state law claims quickly confirms that each claim (to the extent that plaintiff is stating more than one claim) directly conflicts with Charter One's authority, as a national bank, to collect inactivity fees. Without

providing sufficient detail to put defendants on notice as to the precise basis of his claims, the complaint refers to conversion, unjust enrichment, and breach of fiduciary duty/constructive trust. As the Ninth Circuit recently noted "[r]egardless of the nature of the state law claim alleged, however, the proper inquiry is whether the 'legal duty that is the predicate of Plaintiffs' state law claim falls within the preemptive power of the [National Bank Act] or regulations promulgated thereunder." *Rose v. Chase Bank USA, N.A.,* 513 F.3d 1032, 1038 (9th Cir. 2008) (*quoting Cipollone v. Liggett Group, Inc*. 505 U.S. 504, 524 (1992)).

Here, the predicate legal duty—the alleged duty to abstain from collecting inactivity fees—is the same for each of plaintiff's claims, whether the claims are labeled conversion, unjust enrichment, or breach of fiduciary duty. As such, the legal duty about which plaintiff complains falls squarely within the preemptive power of the National Bank Act. Because the National Bank Act permits Charter One to collect inactivity fees on gift cards, this Court should reject plaintiff's state-law based challenges to the legality of those fees.

### III. EVEN IF THE NATIONAL BANK ACT DID NOT PREEMPT PLAINTIFF'S CLAIMS, THE COMPLAINT FAILS TO STATE A CLAIM BECAUSE A WRITTEN CONTRACT EXISTS BETWEEN PLAINTIFF AND CHARTER ONE.

#### A. A Written Contract Exists Between Plaintiff and Charter One and That Contract Authorizes Charter One to Collect Inactivity Fees.

Plaintiff's gift card was issued with a cardholder agreement that defined the terms and conditions for the use of the card. (*See* Ex. A, 2004 Charter One MasterCard® Gift Card Cardholder Agreement ("Cardholder Agreement").) Plaintiff's acceptance of the Cardholder Agreement created an express contract between the parties. (*See* Ex. A, Cardholder Agreement ("This Agreement ("Agreement") governs the use of Your Charter One MasterCard® Gift

7

Card.).)[4]  It is undisputed that plaintiff accepted the terms of the Cardholder Agreement by signing the back of the gift card and by using the gift card. (*Id.* ("You accept and agree to all the terms and conditions of this Cardholder Agreement.  Your acceptance is evidenced by Your signing the reverse side of the Card or using the Card to make any purchase . . . ."); *see also* Compl. ¶ 5 ("By using the card, the holder agrees to all terms under which it was issued and any amendments thereto.").)

Courts that have addressed this issue routinely hold that a gift card agreement is a contract between the gift card issuer and the gift card user. *See Pleasants v. Am. Express Co.*, No. 4:06-CV-1516 (CEJ), 2007 WL 2407010, at *3 (E.D. Mo. August 17, 2007) (holding that the plaintiff's use of the gift cards "amounted to acceptance of the cards' terms and conditions"); *Doerhoff v. General Growth Properties, Inc.*, No. 06-04099-CV-C-SOW, 2006 WL 3210502, at *3 (W.D. Mo. Nov. 6, 2006) (finding that a Gift Card Agreement issued at the time of purchase is a contract between a gift card issuer and a gift card user); *see also Stinger v. Chase Bank, USA, N.A.*, No. 07-20325, 2008 WL 344760, at *3 (5th Cir. Feb. 7, 2008) (finding that the cardholder was bound by the terms of the credit card agreement when he used the card); *Davis v. JP Morgan Chase Bank,* No. 03 C 6891, 2004 WL 783382, at *2 (N.D. Ill. Jan. 27, 2004) (finding that cardholders accepted the modification of the credit card agreement by continuing to use the credit card after being notified that the terms had changed); *Magnuson v. Citibank (South Dakota) N.A.*, No. 2-06-465-CV, 2008 WL 426245, at *7 (Tex. App. Feb. 14, 2008) (holding

---

[4]  The Court may properly consider the Cardholder Agreement in ruling on this motion to dismiss.  "Documents that defendants attach to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to its claim." *Gingiss Owners Ass'n, Inc. v. Gingiss Group, Inc.,* No. 02 C 7318, 2003 WL 22118929, at *1, n.1 (N.D. Ill. Sept. 11, 2003) (*citing Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431–32 (7th Cir. 1993)).  Here, the complaint refers to the terms and conditions included in the Cardholder Agreement by including a photocopy of the back of the gift card and also by acknowledging that "[b]y using the card, [the plaintiff] agrees to all terms under which it was issued and any amendments thereto." (Compl. ¶ 5.)  Moreover, the Cardholder Agreement is central to plaintiff's claim because the Cardholder Agreement defines the rights and obligations of the parties.

that a credit card holder was bound by the terms of the credit card agreement because he signed the application for the card and used the card).

Under the Cardholder Agreement, plaintiff agreed to pay all the fees charged by Charter One for the gift card, and Charter One clearly disclosed it would charge inactivity fees on plaintiff's card. (*See* Ex. A, Cardholder Agreement at Sec. 2M & Charter One Gift Card Fee Schedule.) Specifically, the Cardholder Agreement states that Charter One charged a monthly fee of $2.50 for each month the card remained inactive after six months. (*See id.*, at Charter One Gift Card Fee Schedule ("Inactivity Fee . . . [t]his is a monthly fee charged against any unused monetary value each month the Gift Card remains inactive after six months.").) Under the express terms of the contract, Charter One was authorized to collect inactivity fees and therefore plaintiff cannot now claim that it was unlawfully damaged by such actions.[5]

### B.  The Cardholder Agreement Precludes Plaintiff From Recovering on Its State Law Claims.

#### 1.  *Plaintiff's Tort Claims*

Without providing sufficient detail to state a claim, the complaint refers to defendants converting plaintiff's gift card balance and to defendants breaching an alleged fiduciary duty owed to plaintiff. Both claims fail because plaintiff's relationship with defendants is governed by an express written contract and the economic loss doctrine prevents plaintiff from collecting contract damages in tort. The Cardholder Agreement specifically states that Ohio law governs the agreement between the parties and therefore defendants refer to Ohio substantive law throughout this memorandum. (*See* Ex. A, Cardholder Agreement at Sec. 3E.) However, even if the Court finds that Illinois law applies, the complaint still fails to state a claim.

---

[5] Notably, plaintiff does not allege either that (1) defendants breached the contract between the parties or (2) the contract was otherwise infirm.

9

"Under Ohio law, '[t]he economic-loss rule generally prevents recovery in tort of damages for purely economic loss.'" *Pavlovich v. Nat'l City Bank,* 435 F.3d 560, 569 (6th Cir. 2006) (applying Ohio law) (holding that the economic loss doctrine barred plaintiff's tort claim against her bank where the plaintiff could not identify any tort duty owed by the bank, independent of the contract between the parties) (*quoting Corporex Dev. & Constr. Mgmt. v. Shook*, 835 N.E.2d 701, 704 (Ohio 2005).) Similarly, in Illinois, "[t]he economic loss doctrine prevents a plaintiff from recovering in tort purely monetary losses resulting from the defeated expectations of a commercial bargain, regardless of the plaintiff's ability to recover such losses in contract." *Am. Nat'l Bank & Trust Co. of Chicago ex rel. Emerald Invs. LP v. AXA Client Solutions, Inc.*, No. 00 C 6786, 2001 WL 743399, at *14 (N.D. Ill. June 29, 2001) (granting defendant's motion to dismiss plaintiff's conversion claim where the success or failure of the claim depended on the contract between the parties). Here, plaintiff's conversion and breach of fiduciary duty claims are controlled (and extinguished) by the express written contract. Accordingly, plaintiff's conversion claim and breach of fiduciary duty claims are barred as a matter of law.

### (a) Conversion

Even if plaintiff's tort claims: (1) are not preempted by the National Bank Act; and (2) are not barred by the economic loss doctrine, plaintiff's complaint fails to state a claim for conversion. An action for conversion requires that the defendant "have an obligation to deliver specific money as opposed to merely a certain sum of money." *Randleman v. Fidelity Nat'l Title Inc. Co.*, 465 F. Supp. 2d 812, 826–27 (N.D. Ohio 2006) (internal citations omitted). *See also In re Thebus,* 108 Ill. 2d 255, 260 (Ill. 1985) (finding that Illinois law limits a conversion action to money that is capable of being described as a specific piece of chattel).

In *Randleman*, plaintiffs, a putative class of homeowners who refinanced their home mortgages, claimed that the premium they paid for title insurance exceeded the premium allowed by Ohio law and that defendant converted their excess premium payments to its own use. *Randleman,* 465 F. Supp. 2d at 826–27.  The court dismissed plaintiffs' conversion claim because plaintiffs failed to "allege in the complaint that the monies received by defendant were 'earmarked' or that there was an obligation to keep the monies segregated from other funds." *Id.* at 827.  The court further noted that it was unreasonable to infer from the complaint that the defendant was under any obligation to keep the funds intact. *Id.*

Like the plaintiff homeowners in *Randleman*, the plaintiff in the instant case claims that defendants converted his money by reducing his gift card balance. (*See* Compl. ¶ 10.) But plaintiff does not include any allegations that the money was earmarked or that defendants were under any obligation to keep the money segregated from other funds.  To the contrary, the Cardholder Agreement makes such an inference unreasonable.  The Cardholder Agreement states (in bold letters) that the money paid for the gift card "represents a general liability of the Bank" and "is not a deposit and does not establish a separate individual account at the Bank." (Ex. A, Cardholder Agreement at Sec. 1B.)  Accordingly, as in *Randleman*, the Court should dismiss plaintiff's conversion claim for failure to state a claim upon which relief can be granted.

### (b)  Breach of Fiduciary Duty

Plaintiff also refers to defendants owing plaintiff some sort of fiduciary duty. (*See* Compl. ¶12 ("[t]hat at all times herein the Defendants were constructive trustees and/or fiduciaries of the Plaintiffs funds which had been gifted to him by the donor . . . .").)  But "[t]he relationship of a debtor and creditor without more is ***not*** a fiduciary relationship." *Webb v. Chase Manhattan Mortgage Corp.*, No. 2:05-cv-0548, 2007 WL 709335, at *7 (S.D. Ohio Mar. 5, 2007) (emphasis added) (internal citation omitted).  *See Pommier v. Peoples Bank Marycrest*,

11

967 F.2d 1115, 1119 (7th Cir. 1992) (applying Illinois law) ("a debtor-creditor relationship is not a fiduciary relationship as a matter of law") (internal citations omitted).

In the instant case, nothing in the Cardholder Agreement gives rise to a fiduciary duty and the complaint does not—and cannot—allege any facts that would support the creation of a fiduciary duty. Accordingly, because the relationship between plaintiff and Charter One is nothing more than a creditor-debtor relationship, plaintiff has failed to allege the existence of a fiduciary duty.

### 2. *Unjust Enrichment*

Plaintiff also claims that defendants were unjustly enriched because defendants obtained possession of plaintiff's remaining gift card balance. (*See* Compl. ¶ 20(d).) However, "[a] party cannot prevail on a theory of unjust enrichment when an express contract has been formed." *Bergmoser v. Smart Doc. Solutions, LLC*, No. 07-3357, 2008 WL 624848, at *4 (6th Cir. Mar. 5, 2008) (dismissing plaintiffs' unjust enrichment claim where plaintiffs and defendant had an express contract addressing plaintiffs' claims) (internal citation omitted). *See also Villasenor v. Am. Signature, Inc.,* No. 06 C 5493, 2007 WL 2025739, at * 7 (N.D. Ill. July 9, 2007) (applying Illinois law and dismissing the plaintiff's unjust enrichment claim where the parties entered into an express contract that set forth the terms of the purchase). Here, an express contract—the Cardholder Agreement—exists between plaintiff and Charter One and the express contract authorizes Charter One to collect inactivity fees on its gift cards. To the extent that plaintiff is challenging those fees, he cannot do so with a quasi-contractual action such as unjust enrichment.

Moreover, even if an express contract did not exist between the parties, plaintiff's unjust enrichment claim cannot stand. In Ohio, "[u]njust enrichment requires that the party asserting the claim demonstrate that 'the claimant conferred a benefit upon the recipient.'"

12

*Dawson v. Blockbuster*, *Inc.,* No. 86451, 2006 WL 1061769, at *5 (Ohio Ct. App. Mar. 16, 2006) (*quoting Struna v. Convenient Food Mart*, 828 N.E.2d 647, 652 (Ohio Ct. App. 2005)). In *Dawson*, a factually similar situation to the instant case, the plaintiff received three Blockbuster gift cards as gifts but did not try to use the gift cards until after the gift cards expired. *Dawson,* 2006 WL 1061769, at *1–2. Plaintiff sued Blockbuster for damages under a variety of legal theories including unjust enrichment. *Id.* at *1. The appellate court affirmed the dismissal of plaintiff's unjust enrichment claim because the plaintiff received the gift cards as gifts and therefore was not the individual who had actually conferred a benefit on Blockbuster. *Id.* at *5. Likewise here, plaintiff did not purchase the gift card. He received it from a relative as a gift. (Compl. ¶ 4.) Accordingly, plaintiff did not confer any benefit on defendants and therefore cannot state a claim for unjust enrichment.

## CONCLUSION

For the reasons set forth above, defendants Citizens Financial Group and Charter One respectfully ask this Court to dismiss the plaintiff's complaint with prejudice.

Date:  March 28, 2008

Respectfully submitted,

  s/Barry E. Fields
Barry E. Fields, P.C.
Michael D. Foster
Sarah P. Herlihy
KIRKLAND & ELLIS LLP
200 East Randolph Drive
Chicago, Illinois 60601
Tel:  (312) 861-2000
Fax:  (312) 861-2200

*Attorneys for Defendants Citizens Financial Group, Inc. and Charter One*

# EXHIBIT A



# Charter One
## MasterCard® Gift Card
## Cardholder Agreement

A complete guide to regulations governing Your Gift Card.

This Agreement ("Agreement") governs the use of Your Charter One MasterCard® Gift Card. You accept and agree to all the terms and conditions of this Cardholder Agreement. Your acceptance is evidenced by Your signing the reverse side of the Card or using the Card to make any purchase or cash withdrawal Transaction.

### 1. Use of the Card

**A. Definitions.**

"**Bank**" means Charter One Bank, N.A., which may be referred to as the "**Issuer**" or "**us**", as issuer and owner of the Card.

"**Card**" means the Charter One Gift Card.

"**Card Program**" means the Card related services marketed and made available to You, subject to the terms and conditions of this Cardholder Agreement.

"**Purchaser**" means the person who requested issuance of the Card, prepaid to the Bank the monetary value accessible by the Card and is the person to whom this Card was issued.

"**Transaction**" means a request by a User (1) to withdraw cash or obtain information about the amount of unused value remaining on the card at an ATM or (2) to purchase or lease goods and services at a retail merchant location using the Card, which is either authorized or denied by the Bank.

"**User**" means either the Purchaser of the Card and/or any holder of the Card who is the authorized user designated by the Purchaser.

"**You**" and "**Your**" means the Purchaser or User (as defined above).

---

failure of transportation, communication or power supply, or malfunction of or unavoidable difficulties with our equipment. If a court finds that the Bank is liable to You because of what the Bank or its affiliates did or did not do under or in connection with this Agreement or the Charter One Gift Card Program, You may recover from the Bank and its affiliates only Your actual damages.

**In no event will You be able to recover from the Bank any consequential damages, special damages, or exemplary damages, even if the Bank is aware of or You have advised the Bank of the possibility of such damages. Any claims against the Bank or any of its affiliates must be submitted no later than ninety (90) days after the date of the Transaction for which such claim relates or arises.**

**C. Unclaimed Funds**

The balance remaining on Your Charter One Gift Card may become unclaimed funds escheatable to the State, if, as shown by the Bank's records, you have not, within the statutory period, requested refund of unused funds on Your expired Card, corresponded with the Bank concerning the Card, or transacted any business on the Card. If that occurs, the funds will escheat to the State in which Your last known address was located, according to the Bank's records.

**D. Assignment**

In connection with any assignment or other transfer of a Card to an authorized user or any other person, this Agreement shall automatically be transferred to, and shall be binding upon, such new holder or User of such Card, and such person, his/her agents, legal representatives, heirs and estate.

**E. Governing Law and Jurisdiction**

This agreement and all arbitration proceedings will be governed by the laws of the United States and the laws of the State of Ohio, without regard to conflict of law doctrine principles.

**F. Changes To This Agreement**

This agreement constitutes the entire agreement between the Bank and any User regarding use of a Card. The Bank may delay or waive any of its rights at any time without waiving any of its rights at any future time. Except as otherwise required by applicable law, the Bank may change this Agreement, and its related services, at any time and without notice to You. Such changes will be effective immediately.

**G. Severability**

If any of the terms of this Cardholder Agreement are invalid, changed by applicable law or declared invalid by order of a court, the remaining terms of this Gift Card Cardholder Agreement will not be affected, and this Agreement will be interpreted as if the invalid terms had not been placed in this Agreement.

**H. Headings**

The headings in this Agreement are intended only to help organize this Agreement. These headings do not limit or define any party's rights or obligations hereunder.

**I. Binding Arbitration.**

Any controversy or claim arising out of or relating to this Agreement, or any breach thereof, and asserted against or by You, the Bank or against any other party named in this Agreement, shall be settled in accordance with the Rules of the American Arbitration Association. Any arbitration award shall be final and binding on each party hereto, and judgment may be entered upon such award in any court having jurisdiction thereof. Arbitration shall be held in the City of Cleveland, State of Ohio. Each party shall be responsible for its own costs of arbitration.

### Charter One Gift Card Fee Schedule

ATM Withdrawal/Cash Advance Fee ........................ $2.00
This fee is charged for each ATM withdrawal or cash advance obtained.

POS Transaction Usage PIN Fee ............................... $1.00
This fee is charged each time a POS transaction that requires the use of the PIN is made.

Refund Processing Fee ........................................... $10.00
This is a fee for processing the return by check of any unused monetary value upon expiration or reported loss or theft of the Gift Card.

Inactivity Fee .......................................................... $2.50
This is a monthly fee charged against any unused monetary value each month the Gift Card remains inactive after six months.

**To request a PIN:**
You may telephone us toll-free at 1-888-353-9227 if you wish to request a PIN for use at any ATM or retail location that allows PIN-based transactions using your Charter One Gift Card.

Charter One Bank, N.A.

Member FDIC

03264305

76028IO04  10/04

---

**M. Overdrafts**

Because the Card may be used for non-PIN based purchases, under certain conditions it may be possible for a User to charge more than the prepaid amount ("Overdraft"). In such circumstances, the Bank will hold both the User and the Purchaser liable for such overdrafts and associated fees charged by the Bank. We have no obligation to allow any Overdraft. However, if an Overdraft is inadvertently authorized by us, You agree to repay in full, promptly upon our demand, the amount of any and all Overdrafts, plus accrued interest thereon until paid in full at the highest rate permitted by applicable law, plus all reasonable attorney fees, collection expenses and court costs and expenses to the extent permitted by law. If You are a customer with a deposit account at Charter One Bank, N.A., You hereby agree the Bank may deduct any overdraft amount against any such Charter One account of Yours. The Bank reserves the right to charge more than the prepaid amount or remaining balance.

**N. Fees**

You agree to pay all the fees charged by the Bank for the Charter One Gift Card and the Gift Card program Transactions or services applicable to any use of Your Card. You also agree to pay any fees imposed by others such as ATM owners for access to their ATMs to conduct Transactions.

**O. Applicability of the Electronic Fund Transfer Act ("Reg. E")**

Since this Card is not a deposit account at the Bank, the Gift Card Program is not subject to the provisions of The Electronic Fund Transfer Act and/or Regulation E.

### 3. General

**A. Customer Relationship; Release of Liability**

Neither You, nor any Merchant is an agent or partner of the Bank or its affiliate. The Bank shall not have any liability or obligation as to Your use of the Card or participation in the program, and You hereby release the Bank and its affiliates from any and all claims You may have in connection with any action or omission of the Bank or Merchant and their respective affiliates, agents or vendors, in connection with Your use of the Card.

**B. Limited Liability**

Unless expressly prohibited or restricted by applicable law or this Agreement, the liability of the Bank and its affiliates is limited as follows: Except as required by applicable law, the Bank and its affiliates shall have no liability, of any kind whatsoever, to You for performing or failing to perform any services in connection with this Agreement, unless we have acted with malice or in bad faith. Without limiting the above, the Bank shall not be liable for delays or mistakes which happen because of reasons beyond the Bank's control, including, but not limited to, acts of civil, military, or banking authorities, national emergencies, insurrection, war, riots,

**B. Use of Card**

This is a prepaid Card that may be used to make both signature-based (non-PIN) and PIN-based purchases or leases of goods or services from retail merchants that elect to honor this Card or cash withdrawals at ATMs, which accept this Card. When the Card is used for a signature-based Transaction a PIN is not needed for identification of the User or for authorization of the Transaction. A PIN will be required for any PIN-based purchases at any ATM or retail location, which allows PIN-based transactions. If you did not receive a PIN and wish to request one, you may telephone us at 1-888-353-9227. Generally, cash cannot be received back from any Merchant in any signature-based (non-PIN) Transaction. You may transfer this Card to an authorized User. Once the value of the Card is fully used, the Card will no longer be usable for any Transactions. **This Card represents a general liability of the Bank. The money paid is not a deposit and does not establish a separate individual account at the Bank.** You cannot link the Card to any deposit or credit account You may have at the Bank or any other financial institution. This Card may not be reloaded with additional value and is disposable when all value has been used. Since the Card's value has been prepaid, You should treat it the same as cash. When the Card's value has been depleted - and you are certain that you do not intend to return any purchases made with the Card which would result in a balance remaining on the Card - destroy the Card by cutting it in half through both the magnetic stripe and Card number.

**C. Expiration or Termination of Your Card**

The Card shall expire and no longer be valid for use upon the expiration date on the face of the Card; provided, no Card shall expire sooner than six (6) months from the date of issue. However, prior to the expiration date, the Bank may terminate Your use of the Card at any time and for any reason without prior notice to You. Upon expiration, You may claim any portion of the unused monetary value of the Card by writing to the Bank; include the Card number, the name of the Purchaser of the Card, and Your name and address to the Bank, at the address below and request a refund of the unused balance. The Bank will send a check to You in the amount of the remaining balance less a processing fee and any applicable monthly fees or charges.

**2. Features of Card; POS and ATM Transactions**

**A. Valuation of Card**

The Charter One Gift Card will be issued in denominations between $25 and $500. The unused prepaid monetary value accessible by the Card cannot be redeemed or used by You except under the terms of this Agreement. Upon termination of the Charter One Gift Card program for any reason and at any time you may redeem all remaining monetary value at such time by contacting the Bank using the information on the back of the Card. Following expiration of the Card You may redeem any unused prepaid monetary value. The redemption of value will be subject to a processing fee and a monthly fee imposed by the Bank until the time of redemption or the remaining value has been reduced to zero. To redeem the Card, You must request redemption in writing and send the Card number, and the name of the Purchaser of the Card, Your name and address to the Bank. To allow for the processing of all outstanding transactions, the final unused prepaid monetary value available to be redeemed may not be determined by the Bank for up to sixty (60) days following the expiration of the Card. After the sixty (60) day period, the unused monetary value less any fees will be returned by check to You at Your last known address according to the Bank's records.

**B. Inquiries on Your Card Balance; No Periodic Statement**

To learn the amount of unused monetary value available with Your Card, or for other information regarding Your Card, You may call the Bank at the telephone number on the back of the Card 24 hours a day, seven days a week. Additionally, You may obtain the amount of the unused monetary value by using Your Card at any ATM bearing the Star® or Cirrus® logos to perform a balance inquiry Transaction. The Bank will not issue any periodic statement showing transactions performed or the unused monetary value left on the Card. However, if You make a request in writing to the Bank and include Your Card number, the name of the Card Purchaser, Your name and address where You would like the Transaction summary sent, the Bank will send You a written summary of Transactions made with the Card.

**C. POS (Purchase) Transactions.**

You or Your authorized user must place Your signature on the reverse side of Your Card. Your Card is accepted at millions of locations worldwide to purchase or lease goods and services at a terminal operated by a Merchant ("POS (Purchase) Terminal"). If You use the Card to request a POS Transaction, You are authorizing a reduction in the current prepaid monetary value accessed by the Card in order to cover the amount of the purchase and any fees for the POS (Purchase) Transaction will not be authorized if there is not a sufficient unused monetary value accessible by the Card to cover the POS Transaction and any fees.

**Special Usage Situations**

Restaurants and hotels may authorize Your Card for 10% to 20% more than the purchase amount in order to cover any anticipated gratuity or incidental hotel charges. Because this authorization may be greater than the balance available on Your Card, it is possible that Your MasterCard® Gift Card may be declined.

In addition, to use Your Gift Card at a gas station, You must pay inside because Your Card cannot be used at the pump.

If needed, You may request a "split transaction" from a merchant to pay for any remaining balance exceeding the available balance on Your Gift Card. For example, if You wish to make a $20 purchase, but only have $15 remaining on Your Gift Card, You may use Your Card to pay $15 and pay the remaining $5 balance by other means such as cash, check or credit Card.

**D. ATM Transactions; Personal Identification Number ("PIN")**

A PIN will be required to conduct any eligible ATM Transaction. The Card may be used with the PIN at any ATM bearing the Star® or Cirrus® logos to withdraw cash or obtain balance information. However, if You use the Card to request a cash withdrawal or obtain balance information, You are authorizing a reduction in the then current prepaid monetary value accessed by the Card in order to cover the amount of the requested cash withdrawal and all fees charged for such Transaction including any ATM owner access fee. You may also be charged a fee for a balance inquiry Transaction that will be deducted from the unused monetary value. An ATM Transaction will not be authorized if there is not a sufficient unused monetary value accessible by the Card to cover the amount of the ATM Transaction and any fees, including the ATM owner access fee.

**E. Risk of Loss; Errors**

THE CHARTER ONE GIFT CARD IS LIKE CASH. YOU AGREE TO USE YOUR BEST EFFORTS TO PROTECT YOUR CARD AGAINST LOSS, THEFT OR UNAUTHORIZED USE. YOU ASSUME ALL RISKS OF LOSS FROM A LOST OR STOLEN CARD. A REPLACEMENT CARD WILL NOT BE ISSUED. Instead, for such Cards reported as lost or stolen the Bank will issue a check for the remaining balance less any fees within sixty (60) days at Your last known address according to the Bank's records. In case of suspected errors or questions about Your use of the Charter One Gift Card, telephone us toll free at 1-888-353-9227 or write us at:

Charter One Bank
Attn: Gift Card Unit – JSC3180
1215 Superior Avenue
Cleveland, OH 44114.

If You think a receipt is wrong or if You need more information about a Transaction listed on a receipt, we must hear from You no later than sixty (60) days after the receipt was issued on which the problem or error appeared.

1. Tell us Your name and the name of the Purchaser of the Card.
2. Tell us the number of the Card.
3. Describe the error or the Transaction You are unsure about, and explain as clearly as You can why You believe it is an error or why You need more information.
4. Tell us the dollar amount of the suspected error. If You tell us orally, we require that You confirm the information You provided us in writing within ten (10) business days. We will determine whether an error has occurred within ten (10) business days after we hear from You in writing and will refund promptly to You the amount of any error.

**F. Your Liability for POS or ATM Transactions**

You or Your authorized User must contact the Bank at once if You believe Your Card has been lost or stolen. YOU AGREE THAT IF YOU GIVE YOUR CARD TO SOMEONE ELSE TO USE, YOU ARE AUTHORIZING HIM OR HER TO ACT ON YOUR BEHALF AND YOU WILL BE FULLY RESPONSIBLE FOR ANY AND ALL USE OF THE CARD BY HIM OR HER.

**G. Card Issuance.**

Each Card is owned and issued by the Bank and is its property. You must surrender the Card to the Bank, or its agent upon its request.

**H. Responsibility for Goods or Services.**

The Bank is not responsible if any person does not honor Your Card or for defects in or non-delivery of any goods or services You purchased or leased by using the Card or the failure of any ATM to correctly complete a Transaction.

**I. Authorization**

All ATM and POS (Purchase) Transactions will be subject to the terms of this Cardholder Agreement. Nothing in this Cardholder Agreement shall require us to authorize any Transaction.

**J. The Network Rules**

The confidential and proprietary network operating rules and regulations of the Star and Cirrus ATM networks and MasterCard International Incorporated network, including, without limitation, procedures for authorization of ATM and POS (Purchase) Transactions and duties and remedies for reversals and adjustments of ATM and POS (Purchase) Transactions, will apply to each ATM or POS (Purchase) Transaction, respectively in accordance with the appropriate network rules. Except as permitted in the Network rules, You cannot assert any claim or defense You may have against a Merchant in a POS (Purchase) Transaction or a bank in an ATM Transaction against settlement and payment of such Transaction.

**K. Ineligible Uses**

Pursuant to federal law governing transactions with sanctioned countries, you may not be able to complete transactions with or in countries as established by the United States Department of the Treasury's Office of Foreign Assets Control.

**L. Address of Card Purchaser**

The address associated with Your Card will be the address which was provided to the Bank by the Card Purchaser upon purchase of the card. However, if the User is other than the Purchaser of the card, we will respond to any written inquires based on the name and address included in the inquiry or request.