IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ROBERT GREEN, individually, and on behalf of all others similarly situated, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>CITIZENS FINANCIAL GROUP, INC., a )<br>foreign corporation and CHARTER ONE, )<br>)<br>Defendants. ) | Case No. 08-CV-1684<br><br>Judge Joan B. Gottschall<br>Magistrate Judge Nolan |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS'
<u>FRCP RULE 12(b)(6) MOTION TO DISMISS</u>**

**I
Introduction**

This case is a class action brought by the Plaintiff on behalf of others like himself who received an unsolicited "gift card" from a third party donor entitling him to a stated amount of case credit from an account and cash deposit previously established with the Defendant Bank by the donor. Other than the expiration date for the use of the card, the gift card contained no restrictions or conditions.

**II
Proper Parties**

Plaintiff agrees with the Defendants' Motion concerning the propriety of naming the appropriate parties as defendants. Accordingly, Plaintiff is tendering herewith an amended complaint together with a motion for leave to file it.

## III
## Collection of Inactivity Fees

Plaintiff also agrees with the Defendants that national banks and for that matter, most likely, State chartered banks as well, may issue "gift cards" however, like lawyers who are licensed to practice banks too, whether locally, state or nationally chartered, must do so in accordance with our ethical and legal obligations.

## IV
## Inactivity Fees

Defendants are putting the cart before the horse. Plaintiff has never heard of the term "inactivity fee". The term is not referred to in Plaintiff's State court complaint. Nor is it referred to in his proffered amended Federal Court complaint. Perhaps an FRCP Rule 26(a) disclosure by the Defendants or Plaintiff's discovery will identify what an "inactivity fee" is. Once identified, perhaps it is relevant to this case. Until then, the fact that there is regulatory authority for the Defendants to euphemistically offer "electronic stored value systems" i.e. take in deposits of cash from one party who informs the defendants at the point of deposit and account opening, that the account is for the benefit of a third party is insignificant. Whether the accounting for the monies held by the Defendants is electronically or mechanically done by people wearing green eye shades is not the issue. Plaintiff does not know what rationalization or labels the Defendants use to describe their wrongful conduct. The label begs the question, i.e. whether or not the entire transactional process by Defendants provides the information so that all parties to the transaction have

had a meeting of the minds as to the charges to be made by the Defendants and the net amount to be "gifted" to the donee.

**V**
**Office of the Controller of the Currency Regulation**

Defendants, in their memorandum state that,"as other courts have noted, the OCC's regulations . . .   Furthermore, the OCC has issued regulations that require the disclosure of expiration dates and administrative fees on "gift cards".  Defendants' Memorandum at page 5.  In fact the regulations cited by the Defendants in support of their motion state as follows:

> ● <u>Disclosures on Gift Cards</u>.  Basic information that is most essential to a gift card recipient's decisions about when and how to use the card should be provided on the gift card itself, or on a sticker or tape affixed to the gift card.  In light of the terms and provisions of most bank gift cards, this information generally will include disclosures relating to the following matters:
>
> - The expiration date of the card (which, consistent with existing practices for credit and debit cards, should be presented clearly on the front of the card);
>
> - The amount or the existence of any monthly maintenance, dormancy, usage, or similar fees; and
>
> - How consumers may obtain additional information about their cards or other customer service (for example, by providing a toll-free number or Web site address).
>
> ● <u>Disclosures Accompanying Gift Cards</u>.  Other information that is important to a gift card recipient's decisions and actions should be provided in a form that is designed to be passed on with the card to the recipient, and issuers should encourage card purchasers to provide this information to gift card

recipients. For example, the card could be carried in promotional packaging that contains this material information, or inserted into a sleeve that sets forth or is attached to these disclosures. Depending on the terms of the gift card product, this information may include:

- The name of the bank that issued the card;

- Any other fees that may apply to the card, including card replacement or reissuance fees, balance inquiry fees, foreign currency conversion fees, and cash redemption fees, and how they will be collected (for example, by debits to the card balance);

- Whether and how consumers can receive a replacement card in the event that their card is lost or stolen, the information that consumers need to retain in order to do so, and responsibility for unauthorized transactions;

- Where the card can be used, including, if applicable, suggestions for using the card at gas stations, hotels, restaurants, or other locations that may seek payment authorization in an amount greater than the consumer's actual purchase;

- The issuer's obligation to authorize transactions through use of the card, and examples of the circumstances under which it may refuse to do so;

- The importance of tracking the balance remaining on the card;

- Whether, and if so, how the card may be used in "split payment" transactions (when the card is used in conjunction with another form of payment) and the process for redeeming *de minimis* remaining balances;

- How consumers can resolve problems and complaints and receive balance and other information about their cards; and

- When applicable, the issuer's ability to revoke or change the terms of the gift card agreement.

**PRACTICES TO AVOID**

```
National bank gift card issuers should take appropriate
steps to avoid engaging in marketing or promotional
practices that could mislead a reasonable consumer
about the terms, conditions, or limitations of the bank
gift card product they are offering.  For example,
issuers should not advertise a gift card as having "no
expiration date" if monthly service or maintenance
fees, dormancy fees, or similar charges can consume the
card balance and thereby have the same practical effect
as an expiration date.  Similarly, if such fees may
consume the card balance before the stated expiration
date for the card arrives, disclosures relating to that
expiration date (other than the disclosure on the front
of the card) should explain that possibility.  Issuers
also should generally avoid describing gift card
products in terms suggesting that they are similar to
gift certificates or other payment instruments with
which consumers may be more familiar, or as products
that carry federal deposit insurance when such
insurance does not apply.
```

[See OCC 2006-34 dated August 14, 2006, a copy is attached hereto as *Exhibit A*]

Plaintiff's complaint, contrary to Defendants' belief that the core issue of Plaintiff's complaint is "the predicate legal duty - the alleged duty to abstain from collecting inactivity fees" (Defendants' memorandum at page 7) is dead wrong.  Plaintiff does not take issue with the fees and charges and forfeitures that Defendants may charge so long as there is complete and adequate disclosure in order that the parties to the transaction have had a meeting of the minds rather than to have been the victims of a scam.

## VI
### No Written or Oral Contract Exists Between Plaintiff and Defendants

Far too many legal and factual reasons exist for this Court to conclude that the Plaintiff and the Defendants ever had a meeting of the minds so as to have formed an agreement as to Defendants' charges to be addressed in this response. Without conceding

that a so called undisclosed Website containing the "terms and conditions" of Defendants "gift card" program could possibly be the basis for a meeting of the minds, Plaintiff points out that he never attempted to use the card until December of 2005, a year after he received it. Defendants own card required the <u>use</u> of the card to trigger the acceptance" of the secreted "terms and conditions". By the time Plaintiff used the card for the first time, Defendants had already helped themselves to more than 40% of his gifted property without his knowledge or consent.

## VII
## Fiduciary Duty

It is elementary common law that a fiduciary relationship exists in all cases where one reposes trust and confidence in another who thus gains a resulting influence and superiority which has been abused. See *Mitchell v. Simms,* 79 Ill. App. 3d 215, 398 N.E.2d 211, 34 Ill. Dec. 536. Here, the donor gave defendants her money to keep and save for the benefit of a third party identified by an account number and a card that defendants knew was a gift to a third party. This is a classic formation of a trust. Were the Court to disagree that a trust agreement was created for the benefit of plaintiff, this is a classic case for the Court to impose a constructive trust. The constructive trust is a trust imposed by a court of equity to prevent a party from holding for his or her own advantage property which he or she acquired through fraud or by taking advantage of a fiduciary relationship. *Id* citing *Anderson v.Lybeck,* (1958), 15 Ill. 2d 227, 154 N.E.2d 259.

## VIII
## Unjust Enrichment

Here, no contract existed between the parties. Moreover, the bank derived monetary benefit from the money it took that belonged to the plaintiff plus the defendants benefitted by using the principal while it was on deposit for its own investment upon which it received profitable returns.

WHEREFORE, for all of the above reasons, Plaintiff respectfully requests that this Court deny Defendants' FRCP Rule 12(b)(6) motion to dismiss.

By: /s/ Robert A. Holstein
Plaintiff's Attorney

Robert A. Holstein
HOLSTEIN LAW OFFICES, LLC
19 South LaSalle Street, Suite 1500
Chicago, Illinois 60603
Tel. No. (312) 906-8000

## **CERTIFICATE OF SERVICE**

  Robert A. Holstein, an attorney, certify that on May 22, 2008, he electronically filed the foregoing document with the Clerk of the United States District Court for the Northern District of Illinois using the CM/ECF system, which will send notification of such filings to the individuals indicated on the attached service list.

Electronic Notification by Court:

Barry E. Fields, P.C.
Michael D. Foster
Sarah Herlihy
KIRKLAND & ELLIS LLP
200 East Randolph Drive
Chicago, Illinois 60601

             /s/ Robert A. Holstein
             _____



**OCC 2006-34**

# OCC BULLETIN

**Comptroller of the Currency**
**Administrator of National Banks**

| Subject: | Gift Card Disclosures | Description | Guidance on Disclosure and Marketing Issues |
|---|---|---|---|

**TO:** Chief Executive Officers and Compliance Officers of All National Banks, Department and Division Heads, and All Examining Personnel

**PURPOSE AND SCOPE**

This bulletin is intended to provide guidance to national banks on a number of disclosure and marketing issues presented by gift cards, so that national banks that issue gift cards do so in a manner in which both purchasers and recipients of gift cards are fully informed of the terms and conditions of the product.[1]

**BACKGROUND**

A gift card is a type of prepaid or stored value card that is designed to be purchased by one consumer (purchaser) and presented as a gift to a second consumer (recipient).[2] The terms and conditions of different gift card products can vary significantly, but gift cards are generally divided into two main categories: retail gift cards and bank-issued gift cards. A retail gift card is typically offered by a major retail, entertainment, or food service company, to be used at establishments owned and operated by that company. A bank-issued gift card is typically issued by a financial institution, carries the logo of a payment card network such as VISA, MasterCard, or American Express, and can be used at the various locations that accept cards from that network.[3]

A bank-issued gift card is typically a bank product, and not merely an arrangement through which a third party can facilitate the use of its product in a payment card network. When a gift card is a bank product, the consumer's agreement is with the bank, and the gift card and the related disclosures, the cardholder agreement, and other documentation will specifically identify the bank as the issuer of the card. In addition, the bank generally will establish and impose the fees and other terms associated with the card and control the net proceeds of such fees; will be the party with the financial responsibility to merchants that honor the card; and will hold for its

---

[1] This bulletin is limited to particular disclosure matters relating to bank-issued gift cards. It does not address other supervisory issues relating to these products or to other types of "prepaid" or "stored value" card products.
[2] In this regard, gift cards differ from payroll cards, travel expense cards, and other types of prepaid card products that are not designed to be marketed as a gift from one consumer to another.
[3] As in the case of credit cards, bank-issued gift cards may be co-branded and offered through, or jointly with, a retailer or other company such as a retail shopping mall, but these cards generally have the same broad acceptability as other bank cards.

own account, or for the account of the consumer, the pool of funds used to pay merchants when consumers present gift cards to pay for goods and services.[4]

Industry studies and media reports suggest that the gift card market is growing rapidly, and will continue to do so over the next several years. This rapid growth – together with the diversity of fees and other terms and conditions among different gift card products – shows that it is important for national banks that offer these products to adopt sound disclosure practices to help ensure that consumers understand the gift card products they are purchasing and using.

**CONSUMER DISCLOSURES**

Because the purchaser and the recipient of a gift card typically are not the same person, gift cards present unique disclosure challenges. In particular, providing disclosures to a gift card purchaser may not be sufficient to avoid compliance and reputation risks related to misunderstanding by a recipient about material costs, terms, and conditions of the gift card. In these circumstances, the OCC expects national bank gift card issuers to take appropriate actions to ensure that critical information is provided in a form that is likely to be readily available to recipients, as well as purchasers, of gift cards. Accordingly, with respect to gift cards that are bank products, the OCC would expect to see the following disclosures:

- <u>Disclosures on Gift Cards</u>. Basic information that is most essential to a gift card recipient's decisions about when and how to use the card should be provided on the gift card itself, or on a sticker or tape affixed to the gift card. In light of the terms and provisions of most bank gift cards, this information generally will include disclosures relating to the following matters:

    – The expiration date of the card (which, consistent with existing practices for credit and debit cards, should be presented clearly on the front of the card);

    – The amount or the existence of any monthly maintenance, dormancy, usage, or similar fees; and

    – How consumers may obtain additional information about their cards or other customer service (for example, by providing a toll-free number or Web site address).

- <u>Disclosures Accompanying Gift Cards</u>. Other information that is important to a gift card recipient's decisions and actions should be provided in a form that is designed to be passed on with the card to the recipient, and issuers should encourage card purchasers to provide this information to gift card recipients. For example, the card could be carried in promotional packaging that contains this material information, or inserted into a sleeve that sets forth or is attached to these disclosures. Depending on the terms of the gift card product, this information may include:

    – The name of the bank that issued the card;

---

[4] In connection with the gift card, the bank would be subject to the prohibition against unfair or deceptive acts or practices in the Federal Trade Commission Act, 15 USC 45(a)(1), and to all other requirements applicable to bank products.

- Any other fees that may apply to the card, including card replacement or reissuance fees, balance inquiry fees, foreign currency conversion fees, and cash redemption fees, and how they will be collected (for example, by debits to the card balance);

- Whether and how consumers can receive a replacement card in the event that their card is lost or stolen, the information that consumers need to retain in order to do so, and responsibility for unauthorized transactions;

- Where the card can be used, including, if applicable, suggestions for using the card at gas stations, hotels, restaurants, or other locations that may seek payment authorization in an amount greater than the consumer's actual purchase;

- The issuer's obligation to authorize transactions through use of the card, and examples of the circumstances under which it may refuse to do so;

- The importance of tracking the balance remaining on the card;[5]

- Whether, and if so, how the card may be used in "split payment" transactions (when the card is used in conjunction with another form of payment) and the process for redeeming *de minimis* remaining balances;

- How consumers can resolve problems and complaints and receive balance and other information about their cards; and

- When applicable, the issuer's ability to revoke or change the terms of the gift card agreement.

**PRACTICES TO AVOID**

National bank gift card issuers should take appropriate steps to avoid engaging in marketing or promotional practices that could mislead a reasonable consumer about the terms, conditions, or limitations of the bank gift card product they are offering. For example, issuers should not advertise a gift card as having "no expiration date" if monthly service or maintenance fees, dormancy fees, or similar charges can consume the card balance and thereby have the same practical effect as an expiration date. Similarly, if such fees may consume the card balance before the stated expiration date for the card arrives, disclosures relating to that expiration date (other than the disclosure on the front of the card) should explain that possibility. Issuers also should generally avoid describing gift card products in terms suggesting that they are similar to gift certificates or other payment instruments with which consumers may be more familiar, or as products that carry federal deposit insurance when such insurance does not apply.

---

[5] Some gift card issuers provide a simple chart, similar to a checking account register, for gift card recipients to use to track their purchases and remaining balances.

**OCC 2006-34**

Questions concerning this bulletin may be directed to the Community and Consumer Law Division at (202) 874-5750 or to the appropriate supervisory office.

_____/s/_____
Julie L. Williams
First Senior Deputy Comptroller and Chief Counsel