IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ROBERT GREEN, individually, and on behalf of all others similarly situated, )<br>)<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>CHARTER ONE BANK, NATIONAL )<br>ASSOCIATION, a foreign corporation, also )<br>known as and doing business as, RBS )<br>CITIZENS, NATIONAL ASSOCIATION, )<br>foreign corporation, )<br>)<br>Defendant. ) | Case No. 08-CV-1684<br><br>Judge Gottschall<br>Magistrate Judge Nolan |

**MEMORANDUM IN SUPPORT OF DEFENDANT'S**
**FED. R. CIV. P. 12(b)(6) MOTION TO DISMISS**

Plaintiff Robert Green has filed this action complaining about the collection of gift card fees he voluntarily agreed to pay—fees that are permissible under federal law. In late 2004, plaintiff was given a $30 gift card that was issued by Charter One Bank, National Association ("Charter One").[1] The written cardholder agreement governing the use of the card clearly disclosed the fees that customers incur when the gift card is inactive for more than six months. For some unknown reason, plaintiff waited at least 11 months before he used the gift card and this decision resulted in him incurring the disclosed inactivity fees after the six-month window. Plaintiff is now suing Charter One for collecting the very inactivity fees the bank was entitled to collect—fees he agreed to pay. Plaintiff has filed an amended complaint in an effort

---

[1] On September 1, 2007, Charter One Bank, National Association merged into RBS Citizens, National Association, and therefore no longer exists as an independent legal entity.

to clarify his claims. But his amended complaint, like his original complaint, suffers from deficiencies that are fatal to his claims.

First, his claims fail as a matter of well-established federal law. Charter One is a national bank and the National Bank Act permits national banks to impose inactivity fees on gift cards. As a result, the doctrine of federal preemption precludes plaintiff from recovering on each of his state law claims because each claim is based solely on plaintiff's misguided belief that the collection of such inactivity fees is improper. Second, even if the National Bank Act did not preempt plaintiff's state law claims (which it clearly does), the Court should dismiss plaintiff's amended complaint because it fails to state a claim upon which relief can be granted.

### BACKGROUND ALLEGATIONS[2]

Plaintiff's claims arise from his receipt of a Charter One gift card and his purported belief that Charter One acted unlawfully when it reduced the gift card balance after plaintiff did not use the card for an extended period of time. Specifically, plaintiff alleges that during the 2004 holiday season, a relative sent him a pre-paid $30 Charter One gift card. (Amended Class Action Complaint ("Am. Compl.") ¶ 5.) Upon receipt of the gift card, plaintiff signed the back of the card. (*Id.* at ¶ 6.) The back of the gift card states in pertinent part:

> By using the card, the holder agrees to all terms under which it was issued and any amendments thereto.

(*Id.*) On December 20, 2005, at least eleven months after receiving the card, plaintiff used the gift card for the first time to make a $13.17 purchase. (*Id.* at ¶ 15.) On December 21, 2005, plaintiff called the toll free number on the gift card to find out the remaining balance on the card after he unsuccessfully attempted to make an additional $15.00 purchase with the card. (*Id.* at ¶ 16.) Plaintiff was told that the remaining balance on the card was $4.33. (*Id.* at ¶ 18.)

---

[2] Charter One accepts the allegations in the amended complaint as true for purposes of this motion only.

Nearly two years later, plaintiff filed the instant action against Charter One Bank and Citizens Financial Group, Inc. in the Chancery Division of the Circuit Court of Cook County, Illinois.[3]  On March 21, 2008, defendants timely removed this action to this Court pursuant to 28 U.S.C. § 1332 and the Class Action Fairness Act.  On June 12, 2008, this Court granted plaintiff's motion for leave to file an amended complaint.[4]

Plaintiff alleges claims on behalf of himself and:

> [a]ny and all persons and entities who received a "gift card" evidencing an amount of money previously deposited with the Defendant by the donor in an account for the benefit of the donee in the Defendant's bank which Defendant thereafter utilized for its own benefit without the knowledge or consent of the owner of said funds.

(*Id.* at ¶ 24.)  Specifically, plaintiff's claims revolve around Charter One's disclosure and collection of inactivity fees on its gift cards.  Plaintiff alleges that Charter One breached its fiduciary duty to plaintiff and the putative class, was unjustly enriched entitling plaintiff and the putative class to restitution, violated various state consumer fraud and deceptive trade practices acts, and should be subjected to a constructive trust because it reduced plaintiff's gift card balance over time.  All of plaintiff's claims lack merit.

## ARGUMENT

### I. THE COMPLAINT FAILS TO STATE A CLAIM BECAUSE THE NATIONAL BANK ACT PERMITS CHARTER ONE TO COLLECT INACTIVITY FEES.

Regardless of how plaintiff characterizes his claims, the National Bank Act preempts all of them.  The National Bank Act establishes nationally chartered banks and vests those banks with certain powers, including "all such incidental powers as shall be necessary to

---

[3]  Plaintiff never served the original complaint on either Citizens Financial Group, Inc. or Charter One.

[4]  Plaintiff filed the amended complaint in response to a Fed. R. Civ. P. 12(b)(6) motion to dismiss the original complaint.  Plaintiff no longer lists Citizens Financial Group as a defendant.

3

carry on the business of banking." 12 U.S.C. § 24.  Charter One is a national bank and therefore its business activities are controlled by the National Bank Act and regulations issued thereunder by the Office of the Comptroller of the Currency ("OCC").  *See Charter One Bank v. Tutin*, No. 88081, 2007 WL 701056, at * 1 (Ohio Ct. App. Mar. 8, 2007) (noting that on March 13, 2002, Charter One Bank, F.S.B. converted to a national bank and assumed the name Charter One Bank, N.A.); 12 U.S.C. § 1 *et seq.*

The OCC authorizes national banks to offer electronic stored value systems—or gift cards.  12 C.F.R. § 7.5002(a)(3).  Furthermore, as other courts have noted, the OCC's regulations permit national banks to collect inactivity fees on gift cards.  *SPGGC, LLC v. Ayotte*, 488 F.3d 525, 531 (1st Cir. 2007) ("Furthermore, the OCC has issued regulations that require the disclosure of expiration dates and administrative fees on gift cards, which indicates that the OCC expects that cards might carry expiration dates and fees, and that they are not prohibited from doing so."); *SPGGC, LLC v. Blumenthal*, 505 F.3d 183, 189 (2d Cir. 2007) (*citing* 12 C.F.R. § 7.4002(a) O.C.C. Bull. No. 96-48, Stored Value Card Systems (Sept. 10, 1996) ("OCC regulations appear to permit, or at least not to prohibit, the attachment of expiration dates and dormancy or inactivity fees to such cards.")).  Accordingly, because Charter One is a national bank, federal law permits Charter One to collect those fees on its gift cards.

Moreover, the National Bank Act preempts (or trumps) any state law to the contrary.  As the Supreme Court has repeatedly made clear, the National Bank Act's control over national banks "shields national banking from unduly burdensome and duplicative state regulation."  *Watters v. Wachovia Bank, N.A.,* 127 S. Ct. 1559, 1566–67 (2007) (*citing Beneficial Nat'l Bank v. Anderson,* 539 U.S. 1, 10 (2003)).  National banks are subject to state laws only to the extent that state law does not conflict "with the letter or the general purposes of the [National

Bank Act]." *Id.* at 1567; *see also Charter One Bank*, 2007 WL 701056, at *4 ("It is well settled that federal law preempts state regulation of federal financial institutions.").

Here, because the National Bank Act and the regulations issued thereunder authorize Charter One to collect inactivity fees on gift cards that it issues, the National Bank Act preempts any state law (or any state law-based claim) to the contrary. This is precisely what at least two Courts of Appeal have held in virtually identical situations as the present case. In *Ayotte*, a retail center operator brought an action against the New Hampshire attorney general seeking a declaration that the National Bank Act preempted enforcement of a state law barring the collection of inactivity fees on gift cards. *Ayotte*, 488 F.3d at 528. The First Circuit held that the National Bank Act did indeed preempt the New Hampshire law and affirmed the trial court's award of summary judgment for the retail center operator. *Id.* at 533. The court reasoned that the National Bank Act authorized the retail center operator, as a third party agent to a national bank, to issue gift cards with inactivity fees and that a New Hampshire law prohibiting the collection of such fees significantly interfered with that ability. *Id.* Accordingly, the court held that the National Bank Act preempted New Hampshire law and affirmed the trial court's award of summary judgment for the retail center operator. *Id. See also Blumenthal*, 505 F.3d at 189 (recognizing that the National Bank Act, as applied to a national bank, preempts state laws that prohibit the collection of inactivity fees on gift cards).

The same result arises here. A review of plaintiff's state law claims quickly confirms that each claim directly conflicts with Charter One's authority, as a national bank, to collect inactivity fees. Plaintiff's amended complaint includes claims for breach of fiduciary duty, unjust enrichment, and violations of various state consumer fraud protection statutes. Additionally, plaintiff asks the Court to impose a constructive trust on all monies that plaintiff

alleges Charter One wrongfully obtained from plaintiff and the putative class.  As the Ninth Circuit recently noted "[r]egardless of the nature of the state law claim alleged, however, the proper inquiry is whether the 'legal duty that is the predicate of Plaintiffs' state law claim falls within the preemptive power of the [National Bank Act] or regulations promulgated thereunder." *Rose v. Chase Bank USA, N.A.*, 513 F.3d 1032, 1038 (9th Cir. 2008) (*quoting Cipollone v. Liggett Group, Inc*. 505 U.S. 504, 524 (1992)).

Here, the predicate legal duty—the alleged duty not to collect inactivity fees—is the same for each of plaintiff's claims, whether the claims are labeled breach of fiduciary duty, unjust enrichment, or violations of state consumer fraud statutes.  As such, the legal duty about which plaintiff complains falls squarely within the preemptive power of the National Bank Act.  And, because the National Bank Act permits Charter One to collect inactivity fees on gift cards, Charter One's collection of inactivity fees was appropriate.

## II. EVEN IF THE NATIONAL BANK ACT DID NOT PREEMPT PLAINTIFF'S CLAIMS, THE COMPLAINT FAILS TO STATE A CLAIM BECAUSE A WRITTEN CONTRACT EXISTS BETWEEN PLAINTIFF AND CHARTER ONE.

### A. A Written Contract Exists Between Plaintiff and Charter One and That Contract Authorizes Charter One to Collect Inactivity Fees.

Plaintiff's gift card was issued with a cardholder agreement that defined the terms and conditions for the use of the card.  (*See* Ex. A, 2004 Charter One MasterCard® Gift Card Cardholder Agreement ("Cardholder Agreement").)[5]  It is undisputed that plaintiff accepted the

---

[5] Plaintiff's Amended Complaint implies that plaintiff was not aware of the Cardholder Agreement because he claims that he did not receive a copy of the Cardholder Agreement from the purchaser and the gift card did not state how he could obtain a copy of the terms and conditions on the gift card.  (*See* Am. Compl. ¶¶ 13, 14.)  Such allegations do not save his claims.  It is difficult to fathom how plaintiff could in good faith say he was not aware that the card was governed by terms and conditions.  The gift card specifically discloses that it is subject to various terms and conditions.  Moreover, even if the original purchaser did not forward a copy of the written terms and conditions, plaintiff could have gained knowledge of these provisions through another source. For instance, the back of the card clearly refers card holders to the Charter One website for complete terms and conditions.  (*See* Am. Compl. ¶¶ 5, 14 ("Visit Charterone.com/giftcards for complete Gift Card Terms and Conditions").)

6

terms of the Cardholder Agreement by signing the back of the gift card and by using the gift card. (Ex. A, Cardholder Agreement ("You accept and agree to all the terms and conditions of this Cardholder Agreement. Your acceptance is evidenced by Your signing the reverse side of the Card or using the Card to make any purchase . . . .");[6] *see also* Am. Compl. ¶ 6 ("By using the card, the holder agrees to all terms under which it was issued and any amendments thereto.").) Thus, plaintiff's actions resulted in the creation of an express contract between him and Charter One.

Courts that have addressed this issue routinely hold that a gift card agreement is a contract between the gift card issuer and the gift card user. *See Pleasants v. Am. Express Co.*, No. 4:06-CV-1516 (CEJ), 2007 WL 2407010, at *3 (E.D. Mo. August 17, 2007) (holding that the plaintiff's use of the gift cards "amounted to acceptance of the cards' terms and conditions"); *Doerhoff v. General Growth Properties, Inc.*, No. 06-04099-CV-C-SOW, 2006 WL 3210502, at *3 (W.D. Mo. Nov. 6, 2006) (finding that a Gift Card Agreement issued at the time of purchase is a contract between a gift card issuer and a gift card user); *see also Stinger v. Chase Bank, USA, N.A.*, No. 07-20325, 2008 WL 344760, at **3 (5th Cir. Feb. 7, 2008) (finding that the cardholder was bound by the terms of the credit card agreement when he used the card); *Davis v. JP Morgan Chase Bank,* No. 03 C 6891, 2004 WL 783382, at *2 (N.D. Ill. Jan. 27, 2004) (finding that cardholders accepted the modification of the credit card agreement by continuing to use the credit card after being notified that the terms had changed); *Magnuson v. Citibank (South*

---

[6] The Court may properly consider the Cardholder Agreement in ruling on this motion to dismiss. "Documents that defendants attach to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to its claim." *Gingiss Owners Ass'n, Inc. v. Gingiss Group, Inc.,* No. 02 C 7318, 2003 WL 22118929, at *1, n.1 (N.D. Ill. Sept. 11, 2003) (*citing Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431–32 (7th Cir. 1993)). Here, the complaint refers to the terms and conditions included in the Cardholder Agreement by including a photocopy of the back of the gift card and also by acknowledging that "[b]y using the card, [the plaintiff] agrees to all terms under which it was issued and any amendments thereto." (Am. Compl. ¶ 5.) Moreover, the Cardholder Agreement is central to plaintiff's claim because the Cardholder Agreement defines the rights and obligations of the parties.

*Dakota) N.A.*, No. 2-06-465-CV, 2008 WL 426245, at *7 (Tex. App. Feb. 14, 2008) (holding that a credit card holder was bound by the terms of the credit card agreement because he signed the application for the card and used the card).

Under the Cardholder Agreement, plaintiff agreed to pay all of the fees charged by Charter One for the gift card, and Charter One clearly disclosed it would charge inactivity fees on plaintiff's card. (*See* Ex. A, Cardholder Agreement at Sec. 2M & Charter One Gift Card Fee Schedule.) Specifically, the Cardholder Agreement states that Charter One charges a monthly fee of $2.50 for each month the card remains inactive after six months. (*See id.*, at Charter One Gift Card Fee Schedule ("Inactivity Fee . . . [t]his is a monthly fee charged against any unused monetary value each month the Gift Card remains inactive after six months.").) Here, plaintiff waited at least eleven months after the card was issued to use the card. (*See* Am. Compl. ¶ 7.) Accordingly, plaintiff knew or should have known when he accepted the contract (*i.e.* used the card) that the card no longer carried a $30 balance; the extended period of inactivity resulted in the accrual of fees that reduced the card balance. Because the express terms of the contract, as accepted by plaintiff, authorized Charter One to collect inactivity fees, plaintiff cannot now claim that Charter One acted unlawfully in doing so.[7]

### B. Plaintiff Fails To State A Claim Upon Which Relief Can Be Granted On Each Of The State Law Claims.

Even if the National Bank Act did not preempt plaintiff's state law claims, plaintiff's amended complaint fails to state a claim for (1) breach of fiduciary duty, (2) constructive trust, (3) unjust enrichment, or (4) violations of random consumer fraud and deceptive trade practices acts.

---

[7] Notably, plaintiff does not allege either that (1) defendants breached the contract between the parties or (2) the contract was otherwise infirm.

### *1.* *Breach of Fiduciary Duty*

The economic loss doctrine bars plaintiff's breach of fiduciary duty claim. The Cardholder Agreement specifically states that Ohio law governs the agreement between the parties and therefore defendants refer to Ohio substantive law throughout this memorandum. (*See* Ex. A, Cardholder Agreement at Sec. 3E.) However, even if the Court finds that Illinois law applies, the complaint still fails to state a claim.

"Under Ohio law, '[t]he economic-loss rule generally prevents recovery in tort of damages for purely economic loss.'" *Pavlovich v. Nat'l City Bank,* 435 F.3d 560, 569 (6th Cir. 2006) (applying Ohio law) (holding that the economic loss doctrine barred plaintiff's tort claim against her bank where the plaintiff could not identify any tort duty owed by the bank, independent of the contract between the parties) (*quoting Corporex Dev. & Constr. Mgmt. v. Shook*, 835 N.E.2d 701, 704 (Ohio 2005).) Similarly, in Illinois, "[t]he economic loss doctrine prevents a plaintiff from recovering in tort purely monetary losses resulting from the defeated expectations of a commercial bargain, regardless of the plaintiff's ability to recover such losses in contract." *Am. Nat'l Bank & Trust Co. of Chicago ex rel. Emerald Invs. LP v. AXA Client Solutions, Inc.*, No. 00 C 6786, 2001 WL 743399, at *14 (N.D. Ill. June 29, 2001). Here, plaintiff's breach of fiduciary duty claim is controlled (and extinguished) by the express written contract and therefore is barred as a matter of law.

The breach of fiduciary duty claim also fails because there is no fiduciary relationship between plaintiff and Charter One. At best, the parties have a debtor-creditor relationship, but "[t]he relationship of a debtor and creditor without more is **not** a fiduciary relationship." *Webb v. Chase Manhattan Mortgage Corp.*, No. 2:05-cv-0548, 2007 WL 709335, at *7 (S.D. Ohio Mar. 5, 2007) (emphasis added) (internal citation omitted). *See Pommier v. Peoples Bank Marycrest*, 967 F.2d 1115, 1119 (7th Cir. 1992) (applying Illinois law) ("a debtor-

9

creditor relationship is not a fiduciary relationship as a matter of law") (internal citations omitted). Here, nothing in the Cardholder Agreement gives rise to a fiduciary duty and the complaint does not—and cannot—allege any facts that would support the creation of a fiduciary duty. Consequently, plaintiff cannot state a claim for breach of fiduciary duty.

### 2. *Constructive Trust*

In Count II of his amended complaint, plaintiff attempts to state a claim for the imposition of a constructive trust. The Court should dismiss this "claim" because a constructive trust is a remedy—not a cause of action. *See Cundall v. U.S. Bank,* 174 Ohio App. 3d 421, 499 (Ohio Ct. App. 2007) (refusing to apply a statute of limitations to plaintiff's claim for a constructive trust because statutes of limitation apply to causes of action and a constructive trust is a remedy); *see also Fujisawa Pharm. Co., Ltd. v. Kapoor*, 16 F. Supp. 2d 941, 952 (N.D. Ill. 1998) (noting that a "constructive trust is an equitable remedy, not an independent cause of action" and therefore it is superfluous to a breach of fiduciary duty claim).

### 3. *Unjust Enrichment*

Count III of plaintiff's amended complaint alleges that Charter One was unjustly enriched because it wrongfully retained plaintiff's money when it reduced plaintiff's gift card balance. (*See* Am. Compl. ¶¶ 36–37.) However, "[a] party cannot prevail on a theory of unjust enrichment when an express contract has been formed." *Bergmoser v. Smart Doc. Solutions, LLC*, No. 07-3357, 2008 WL 624848, at *4 (6th Cir. Mar. 5, 2008) (dismissing plaintiffs' unjust enrichment claim where plaintiffs and defendant had an express contract addressing plaintiffs' claims) (internal citation omitted). *See also Villasenor v. Am. Signature, Inc.,* No. 06 C 5493, 2007 WL 2025739, at * 7 (N.D. Ill. July 9, 2007) (applying Illinois law and dismissing the plaintiff's unjust enrichment claim where the parties entered into an express contract that set forth the terms of the purchase). Here, an express contract—the Cardholder Agreement—exists

between plaintiff and Charter One and the express contract authorizes Charter One to collect inactivity fees on its gift cards. To the extent that plaintiff is challenging those fees, he cannot do so with a quasi-contractual action such as unjust enrichment.

The fact that plaintiff received the card as a gift also undermines his unjust enrichment claim. Under Ohio law, a gift card holder who did not purchase the card, cannot state a claim for unjust enrichment. In *Dawson v. Blockbuster, Inc.,* No. 86451, 2006 WL 1061769, at *1–2 (Ohio Ct. App. Mar. 16, 2006), the plaintiff received three Blockbuster gift cards as gifts but did not attempt to use the gift cards until after the cards expired. Plaintiff sued Blockbuster under a variety of legal theories, including unjust enrichment. *Id.* at *1. The appellate court affirmed the dismissal of plaintiff's unjust enrichment claim because the plaintiff was not the individual who conferred the benefit on Blockbuster. *Id.* at *5. Likewise here, plaintiff did not purchase the gift card. He received it from a relative as a gift. (Am. Compl. ¶ 12.) Accordingly, under Ohio law, plaintiff cannot state a claim against Charter One for unjust enrichment.

### 4. *Consumer Protection Statutes*

Count IV of plaintiff's amended complaint claims that Charter One violated the consumer fraud and deceptive trade practices statutes in the states where it does business. (Am. Compl. ¶ 28(e).) At this stage of the litigation, the only relevant inquiry is whether plaintiff has stated a claim that Charter One violated the Illinois Consumer Fraud and Deceptive Trade Business Practices Act when it collected inactivity fees on plaintiff's gift card. *See* 815 ILCS 505/1 *et seq.* Even if the National Bank Act did not preempt this claim (which it does), the Court should reject such a claim.

"To state a claim under the Illinois Consumer Fraud Act, a complaint must set forth specific facts that show (1) a deceptive act or practice by the defendant; (2) the defendant's

11

intent that the plaintiff rely on the deception; (3) the deception occurred in the course of conduct involving a trade or commerce; and (4) the consumer fraud proximately caused the plaintiff's injury." *Munch v. Sears Roebuck and Co.,* Nos. 06 C 7023, 07 C 412, 2007 WL 2461660, at *2 (N.D. Ill. Aug. 27, 2007). A complaint alleging a violation of the Illinois Consumer Fraud Act "must be pleaded with the same particularity and specificity under Rule 9(b) as that required for common law fraud." *Fleming-Dudley v. Legal Investigations, Inc.,* No. 05 C 4648, 2007 WL 952026, at *10 (N.D. Ill. Mar. 22, 2007); *Munch*, 2007 WL 2461660, at *2 (dismissing plaintiffs' Illinois Consumer Fraud claims because plaintiffs' complaint failed to allege sufficient facts to support a claim under Rule 9(b)); *see also Pantoja-Cahue v. Ford Motor Credit Co.,* 872 N.E.2d 1039, 1048–49 (Ill. App. Ct. 2007) (dismissing plaintiff's consumer fraud claim because plaintiff's "bare bones allegations lack the particularity and specificity necessary to support a cause of action" for violation of the Consumer Fraud Act).

In the instant case, even taking all of the factual averments in the amended complaint into consideration, plaintiff's consumer fraud "claim" is bare bones at best. Plaintiff's amended complaint merely claims that Charter One wrongfully took his money for its own use but plaintiff does not allege which of Charter One's actions were wrongful and why, or that Charter One intended for plaintiff to rely on its alleged deception. Plaintiff's failure to include specific facts, as required by Rule 9(b), dooms his consumer fraud claim.

## CONCLUSION

For the reasons set forth above, defendant Charter One respectfully asks this Court to dismiss the plaintiff's amended complaint with prejudice.

Date:  June 26, 2008

Respectfully submitted,

s/Barry E. Fields
Barry E. Fields, P.C.
bfields@kirkland.com
Michael D. Foster
mfoster@kirkland.com
Sarah P. Herlihy
sherlihy@kirkland.com
KIRKLAND & ELLIS LLP
200 East Randolph Drive
Chicago, Illinois 60601
Tel:  (312) 861-2000
Fax:  (312) 861-2200

*Attorneys for Defendant Charter One Bank, National Association*

# EXHIBIT A

Case 1:08-cv-01684    Document 30-2    Filed 06/26/2008    Page 1 of 3



# Charter One MasterCard® Gift Card Cardholder Agreement

A complete guide to regulations governing Your Gift Card.

This Agreement ("Agreement") governs the use of Your Charter One MasterCard® Gift Card. You accept and agree to all the terms and conditions of this Cardholder Agreement. Your acceptance is evidenced by Your signing the reverse side of the Card or using the Card to make any purchase or cash withdrawal Transaction.

## 1. Use of the Card

### A. Definitions.

"**Bank**" means Charter One Bank, N.A., which may be referred to as the "**Issuer**" or "**us**", as issuer and owner of the Card.

"**Card**" means the Charter One Gift Card.

"**Card Program**" means the Card related services marketed and made available to You, subject to the terms and conditions of this Cardholder Agreement.

"**Purchaser**" means the person who requested issuance of the Card, prepaid to the Bank the monetary value accessible by the Card and is the person to whom this Card was issued.

"**Transaction**" means a request by a User (1) to withdraw cash or obtain information about the amount of unused value remaining on the card at an ATM or (2) to purchase or lease goods and services at a retail merchant location using the Card, which is either authorized or denied by the Bank.

"**User**" means either the Purchaser of the Card and/or any holder of the Card who is the authorized user designated by the Purchaser.

"**You**" and "**Your**" means the Purchaser or User (as defined above).

---

### H. Headings

The headings in this Agreement are intended only to help organize this Agreement. These headings do not limit or define any party's rights or obligations hereunder.

### I. Binding Arbitration.

Any controversy or claim arising out of or relating to this Agreement, or any breach thereof, and asserted against or by You, the Bank or against any other party named in this Agreement, shall be settled in accordance with the Rules of the American Arbitration Association. Any arbitration award shall be final and binding on each party hereto, and judgment may be entered upon such award in any court having jurisdiction thereof. Arbitration shall be held in the City of Cleveland, State of Ohio. Each party shall be responsible for its own costs of arbitration.

### Charter One Gift Card Fee Schedule

ATM Withdrawal/Cash Advance Fee .................. $2.00
This fee is charged for each ATM withdrawal or cash advance obtained.

POS Transaction Usage PIN Fee ....................... $1.00
This fee is charged each time a POS transaction that requires the use of the PIN is made.

Refund Processing Fee .................................. $10.00
This is a fee for processing the return by check of any unused monetary value upon expiration or reported loss or theft of the Gift Card.

Inactivity Fee ............................................... $2.50
This is a monthly fee charged against any unused monetary value each month the Gift Card remains inactive after six months.

### To request a PIN:

You may telephone us toll-free at 1-888-353-9227 if you wish to request a PIN for use at any ATM or retail location that allows PIN-based transactions using your Charter One Gift Card.

Charter One Bank, N.A.

03264305

76028I004  10/04

Member FDIC

---

failure of transportation, communication or power supply, or malfunction of or unavoidable difficulties with our equipment. If a court finds that the Bank is liable to You because of what the Bank or its affiliates did or did not do under or in connection with this Agreement or the Charter One Gift Card Program, You may recover from the Bank and its affiliates only Your actual damages.

In no event will You be able to recover from the Bank any consequential damages, special damages, or exemplary damages, even if the Bank is aware of or You have advised the Bank of the possibility of such damages. Any claims against the Bank or any of its affiliates must be submitted no later than ninety (90) days after the date of the Transaction for which such claim relates or arises.

### C. Unclaimed Funds

The balance remaining on Your Charter One Gift Card may become unclaimed funds escheatable to the State, if, as shown by the Bank's records, you have not, within the statutory period, requested refund of unused funds on Your expired Card, corresponded with the Bank concerning the Card, or transacted any business on the Card. If that occurs, the funds will escheat to the State in which Your last known address was located, according to the Bank's records.

### D. Assignment

In connection with any assignment or other transfer of a Card to an authorized user or any other person, this Agreement shall automatically be transferred to, and shall be binding upon, such new holder or User of such Card, and such person, his/her agents, legal representatives, heirs and estate.

### E. Governing Law and Jurisdiction

This agreement and all arbitration proceedings will be governed by the laws of the United States and the laws of the State of Ohio, without regard to conflict of law doctrine principles.

### F. Changes To This Agreement

This agreement constitutes the entire agreement between the Bank and any User regarding use of a Card. The Bank may delay or waive any of its rights at any time without waiving any of its rights at any future time. Except as otherwise required by applicable law, the Bank may change this Agreement, and its related services, at any time and without notice to You. Such changes will be effective immediately.

### G. Severability

If any of the terms of this Cardholder Agreement are invalid, changed by applicable law or declared invalid by order of a court, the remaining terms of this Gift Card Cardholder Agreement will not be affected, and this Agreement will be interpreted as if the invalid terms had not been placed in this Agreement.

---

### M. Overdrafts

Because the Card may be used for non-PIN based purchases, under certain conditions it may be possible for a User to charge more than the prepaid amount ("Overdraft"). In such circumstances, the Bank will hold both the User and the Purchaser liable for such overdrafts and associated fees charged by the Bank. We have no obligation to allow any Overdraft. However, if an Overdraft is inadvertently authorized by us, You agree to repay in full, promptly upon our demand, the amount of any and all Overdrafts, plus accrued interest thereon until paid in full at the highest rate permitted by applicable law, plus all reasonable attorney fees, collection expenses and court costs and expenses to the extent permitted by law. If You are a customer with a deposit account at Charter One Bank, N.A., You hereby agree the Bank may deduct any overdraft amount against any such Charter One account of Yours. The Bank reserves the right to charge more than the prepaid amount or remaining balance.

### N. Fees

You agree to pay all the fees charged by the Bank for the Charter One Gift Card and the Gift Card program Transactions or services applicable to any use of Your Card. You also agree to pay any fees imposed by others such as ATM owners for access to their ATMs to conduct Transactions.

### O. Applicability of the Electronic Fund Transfer Act ("Reg. E")

Since this Card is not a deposit account at the Bank, the Gift Card Program is not subject to the provisions of The Electronic Fund Transfer Act and/or Regulation E.

## 3. General

### A. Customer Relationship; Release of Liability

Neither You, nor any Merchant is an agent or partner of the Bank or its affiliate. The Bank shall not have any liability or obligation as to Your use of the Card or participation in the program, and You hereby release the Bank and its affiliates from any and all claims You may have in connection with any action or omission of the Bank or Merchant and their respective affiliates, agents or vendors, in connection with Your use of the Card.

### B. Limited Liability

Unless expressly prohibited or restricted by applicable law or this Agreement, the liability of the Bank and its affiliates is limited as follows: Except as required by applicable law, the Bank and its affiliates shall have no liability, of any kind whatsoever, to You for performing or failing to perform any services in connection with this Agreement, unless we have acted with malice or in bad faith. Without limiting the above, the Bank shall not be liable for delays or mistakes which happen because of reasons beyond the Bank's control, including, but not limited to, acts of civil, military, or banking authorities, national emergencies, insurrection, war, riots,

**B. Use of Card**

This is a prepaid Card that may be used to make both signature-based (non-PIN) and PIN-based purchases or leases of goods or services from retail merchants that elect to honor this Card or cash withdrawals at ATMs, which accept this Card. When the Card is used for a signature-based Transaction a PIN is not needed for identification of the User or for authorization of the Transaction. A PIN will be required for any PIN-based purchases at any ATM or retail location, which allows PIN-based transactions. If you did not receive a PIN and wish to request one, you may telephone us at 1-888-353-9227. Generally, cash cannot be received back from any Merchant in any signature-based (non-PIN) Transaction. You may transfer this Card to an authorized User. Once the value of the Card is fully used, the Card will no longer be usable for any Transactions. **This Card represents a general liability of the Bank. The money paid is not a deposit and does not establish a separate individual account at the Bank.** You cannot link the Card to any deposit or credit account You may have at the Bank or any other financial institution. This Card may not be reloaded with additional value and is disposable when all value has been used. Since the Card's value has been prepaid, You should treat it the same as cash. When the Card's value has been depleted - and you are certain that you do not intend to return any purchases made with the Card which would result in a balance remaining on the Card - destroy the Card by cutting it in half through both the magnetic stripe and Card number.

**C. Expiration or Termination of Your Card**

The Card shall expire and no longer be valid for use upon the expiration date on the face of the Card; provided, no Card shall expire sooner than six (6) months from the date of issue. However, prior to the expiration date, the Bank may terminate Your use of the Card at any time and for any reason without prior notice to You. Upon expiration, You may claim any portion of the unused monetary value of the Card by writing to the Bank; include the Card number, the name of the Purchaser of the Card, and Your name and address to the Bank, at the address below and request a refund of the unused balance. The Bank will send a check to You in the amount of the remaining balance less a processing fee and any applicable monthly fees or charges.

**2. Features of Card; POS and ATM Transactions**

**A. Valuation of Card**

The Charter One Gift Card will be issued in denominations between $25 and $500. The unused prepaid monetary value accessible by the Card cannot be redeemed or used by You except under the terms of this Agreement. Upon termination of the Charter One Gift Card program for any reason and at any time you may redeem all remaining monetary value at such time by contacting the Bank using the information on the back of the Card. Following expiration of the Card You may redeem any unused prepaid monetary value. The redemption of value will be subject to a processing fee and a monthly fee imposed by the Bank until the time of redemption or the remaining value has been reduced to zero. To redeem the Card, You must request redemption in writing and send the Card number, and the name of the Purchaser of the Card, Your name and address to the Bank. To allow for the processing of all outstanding transactions, the final unused prepaid monetary value available to be redeemed may not be determined by the Bank for up to sixty (60) days following the expiration of the Card. After the sixty (60) day period, the unused monetary value less any fees will be returned by check to You at Your last known address according to the Bank's records.

**B. Inquiries on Your Card Balance; No Periodic Statement**

To learn the amount of unused monetary value available with Your Card, or for other information regarding Your Card, You may call the Bank at the telephone number on the back of the Card 24 hours a day, seven days a week. Additionally, You may obtain the amount of the unused monetary value by using Your Card at any ATM bearing the Star® or Cirrus® logos to perform a balance inquiry Transaction. The Bank will not issue any periodic statement showing transactions performed or the unused monetary value left on the Card. However, if You make a request in writing to the Bank and include Your Card number, the name of the Card Purchaser, Your name and address where You would like the Transaction summary sent, the Bank will send You a written summary of Transactions made with the Card.

**C. POS (Purchase) Transactions.**

You or Your authorized user must place Your signature on the reverse side of Your Card. Your Card is accepted at millions of locations worldwide to purchase or lease goods and services at a terminal operated by a Merchant ("POS (Purchase) Terminal"). If You use the Card to request a POS Transaction, You are authorizing a reduction in the current prepaid monetary value accessed by the Card in order to cover the amount of the purchase and any fees for the POS (Purchase) Transaction will not be authorized if there is not a sufficient unused monetary value accessible by the Card to cover the POS Transaction and any fees.

**Special Usage Situations**

Restaurants and hotels may authorize Your Card for 10% to 20% more than the purchase amount in order to cover any anticipated gratuity or incidental hotel charges. Because this authorization may be greater than the balance available on Your Card, it is possible that Your MasterCard® Gift Card may be declined.

In addition, to use Your Gift Card at a gas station, You must pay inside because Your Card cannot be used at the pump.

If needed, You may request a "split transaction" from a merchant to pay for any remaining balance exceeding the available balance on Your Gift Card. For example, if You wish to make a $20 purchase, but only have $15 remaining on Your Gift Card, You may use Your Card to pay $15 and pay the remaining $5 balance by other means such as cash, check or credit Card.

**D. ATM Transactions; Personal Identification Number ("PIN")**

A PIN will be required to conduct any eligible ATM Transaction. The Card may be used with the PIN at any ATM bearing the Star® or Cirrus® logos to withdraw cash or obtain balance information. However, if You use the Card to request a cash withdrawal or obtain balance information, You are authorizing a reduction in the then current prepaid monetary value accessed by the Card in order to cover the amount of the requested cash withdrawal and all fees charged for such Transaction including any ATM owner access fee. You may also be charged a fee for a balance inquiry Transaction that will be deducted from the unused monetary value. An ATM Transaction will not be authorized if there is not a sufficient unused monetary value accessible by the Card to cover the amount of the ATM Transaction and any fees, including the ATM owner access fee.

**E. Risk of Loss; Errors**

THE CHARTER ONE GIFT CARD IS LIKE CASH. YOU AGREE TO USE YOUR BEST EFFORTS TO PROTECT YOUR CARD AGAINST LOSS, THEFT OR UNAUTHORIZED USE. YOU ASSUME ALL RISKS OF LOSS FROM A LOST OR STOLEN CARD. A REPLACEMENT CARD WILL NOT BE ISSUED. Instead, for such Cards reported as lost or stolen the Bank will issue a check for the remaining balance less any fees within sixty (60) days at Your last known address according to the Bank's records. In case of suspected errors or questions about Your use of the Charter One Gift Card, telephone us toll free at 1-888-353-9227 or write us at:

Charter One Bank
Attn: Gift Card Unit – JSC3180
1215 Superior Avenue
Cleveland, OH 44114.

If You think a receipt is wrong or if You need more information about a Transaction listed on a receipt, we must hear from You no later than sixty (60) days after the receipt was issued on which the problem or error appeared.

1. Tell us Your name and the name of the Purchaser of the Card.

2. Tell us the number of the Card.

3. Describe the error or the Transaction You are unsure about, and explain as clearly as You can why You believe it is an error or why You need more information.

4. Tell us the dollar amount of the suspected error. If You tell us orally, we require that You confirm the information You provided us in writing within ten (10) business days. We will determine whether an error has occurred within ten (10) business days after we hear from You in writing and will refund promptly to You the amount of any error.

**F. Your Liability for POS or ATM Transactions**

You or Your authorized User must contact the Bank at once if You believe Your Card has been lost or stolen. YOU AGREE THAT IF YOU GIVE YOUR CARD TO SOMEONE ELSE TO USE, YOU ARE AUTHORIZING HIM OR HER TO ACT ON YOUR BEHALF AND YOU WILL BE FULLY RESPONSIBLE FOR ANY AND ALL USE OF THE CARD BY HIM OR HER.

**G. Card Issuance.**

Each Card is owned and issued by the Bank and is its property. You must surrender the Card to the Bank, or its agent upon its request.

**H. Responsibility for Goods or Services.**

The Bank is not responsible if any person does not honor Your Card or for defects in or non-delivery of any goods or services You purchased or leased by using the Card or the failure of any ATM to correctly complete a Transaction.

**I. Authorization**

All ATM and POS (Purchase) Transactions will be subject to the terms of this Cardholder Agreement. Nothing in this Cardholder Agreement shall require us to authorize any Transaction.

**J. The Network Rules**

The confidential and proprietary network operating rules and regulations of the Star and Cirrus ATM networks and MasterCard International Incorporated network, including, without limitation, procedures for authorization of ATM and POS (Purchase) Transactions and duties and remedies for reversals and adjustments of ATM and POS (Purchase) Transactions, will apply to each ATM or POS (Purchase) Transaction, respectively in accordance with the appropriate network rules. Except as permitted in the Network rules, You cannot assert any claim or defense You may have against a Merchant in a POS (Purchase) Transaction or a bank in an ATM Transaction against settlement and payment of such Transaction.

**K. Ineligible Uses**

Pursuant to federal law governing transactions with sanctioned countries, you may not be able to complete transactions with or in countries as established by the United States Department of the Treasury's Office of Foreign Assets Control.

**L. Address of Card Purchaser**

The address associated with Your Card will be the address which was provided to the Bank by the Card Purchaser upon purchase of the card. However, if the User is other than the Purchaser of the card, we will respond to any written inquires based on the name and address included in the inquiry or request.