# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| ROBERT GREEN, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 08 C 1684 |
| | ) | |
| v. | ) | Judge Joan B. Gottschall |
| | ) | |
| CHARTER ONE BANK, N.A. | ) | |
| d/b/a RBS CITIZENS, N.A., | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Before the court is a motion by defendant Charter One Bank, N.A. ("Charter One") to dismiss the amended class action complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons stated below, the motion is granted in part and denied in part.

### I. BACKGROUND[1]

Plaintiff Robert Green ("Green") received a Charter One gift card, with a face value of $30.00, as a holiday gift in late 2004. He promptly signed the back of the card, which stated that "[b]y using the card, the holder agrees to all terms under which it was issued and any amendments thereto." Am. Class Action Compl. ¶ 6. Green first tried to use the card eleven months later, on or around December 20, 2005. He made a purchase for $13.17. Later that day, he tried to make a second purchase for $15.00, but was told that the card contained insufficient funds. The next day, Green called the toll-free number on the back of the gift card to check his balance. He learned that it was $4.33, despite the fact that he had spent only $13.17 of the

---

[1] The factual allegations are taken from Green's Amended Class Action Complaint and are accepted as true for purposes of this motion. *See Andonissamy v. Hewlett-Packard Co.*, 547 F.3d 841, 847 (7th Cir. 2008) (noting that all reasonable inferences must be drawn in favor of plaintiff).

$30.00 original balance. He discovered that Charter One had deducted $12.50 from the balance to pay five months' worth of inactivity fees. The card expired at the end of December 2005 with the remaining $4.33 unspent.

## II. ANALYSIS

Green filed suit in the Circuit Court of Cook County, Illinois. Charter One removed the case to federal court on March 21, 2008 on the basis of the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d) ("CAFA").[2] Green brings four state law claims against Charter One: (1) breach of fiduciary duty; (2) constructive trust; (3) unjust enrichment; and (4) breach of various state consumer fraud and deceptive trade practices acts.

Charter One argues that: (1) the claims are preempted by the National Bank Act, 12 U.S.C. § 1 *et seq.* (the "NBA"); (2) the complaint fails to state a claim because the parties had a contract that allows for the collection of inactivity fees; (3) the fiduciary duty claim fails under the economic loss doctrine and because there is no fiduciary relationship between the parties; (4) the constructive trust claim fails because it is a remedy, not a cause of action; (5) the unjust enrichment claim fails in light of the contract between the parties and because Green is not entitled to bring such a claim; and (6) the consumer protection statutory violation claim is inadequately pled under Federal Rule of Civil Procedure 9(b).

### A. Legal Standard

Rule 12(b)(6) permits a defendant to assert by motion that the plaintiff's claim for relief fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). The court must

---

[2] The court issued an order on January 30, 2009 finding the notice of removal to be insufficient because it did not clearly state the citizenship of the parties, nor the basis for calculating the amount in controversy. On February 17, 2009, Charter One filed an amended notice of removal that demonstrates that jurisdiction under CAFA is proper because the matter is a class action where the parties are minimally diverse and the amount in controversy is more than $5 million. *See* 28 U.S.C. § 1332(d)(2).

2

accept as true the allegations of the complaint and draw all reasonable inferences in favor of the plaintiff. *INEOS Polymers, Inc. v. BASF Catalysts*, 553 F.3d 491, 497 (7th Cir. 2009). To survive a Rule 12(b)(6) motion, the complaint "need only provide a 'short and plain statement of the claim showing that the pleader is entitled to relief' that is also sufficient to provide the defendant with 'fair notice' of the claim and its basis." *Windy City Metal Fabricators & Supply, Inc. v. CIT Technical Fin. Servs., Inc.*, 536 F.3d 663, 667 (7th Cir. 2008) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, ___, 127 S. Ct. 1955, 1964 (2007) and Fed. R. Civ. P. 8(a)(2)). The plaintiff need not plead particularized facts, but the factual allegations in the complaint must be sufficient to suggest a plausible, not merely speculative, right to relief. *Twombly*, 550 U.S. at ___, 127 S. Ct. at 1973-74 & n.14; *Tamayo v. Blagojevich*, 526 F.3d 1074, 1083 (7th Cir. 2008).

**B.     Arguments**

Charter One's most expansive argument in favor of dismissal is that the NBA preempts any state law suit that is based on inactivity fees deducted from balances on gift cards. It is undisputed that Charter One, which has merged into RBS Citizens, N.A., is a national bank. Therefore, its business activities are controlled by the NBA and associated regulations promulgated by the Office of the Comptroller of the Currency ("OCC"). *Watters v. Wachovia Bank, N.A.*, 550 U.S. 1, ___, 127 S. Ct. 1559, 1564 (2007). The NBA vests banks with "all such incidental powers as shall be necessary to carry on the business of banking." 12 U.S.C. § 24 (Seventh). The OCC regulations specifically authorize national banks to offer "electronic stored value systems," that is gift cards. 12 C.F.R. § 7.5002(a)(3). They also provide that "[a] national bank may charge its customers non-interest charges and fees . . . ." *Id.* § 7.4002(a). Both regulations contain statements noting that the OCC applies preemption principles in determining whether state law applies to limit the rights of national banks in regard to these issues. *Id.*

3

7.4002(d); *id.* 7.5002(c).

The NBA "shields national banking from unduly burdensome and duplicative state regulation." *Watters*, 550 U.S. at ___, 127 S. Ct. at 1567 (internal citations omitted). Thus, national banks "are subject to state laws of general application in their daily business to the extent such laws do not conflict with the letter or the general purpose of the NBA." *Id.* Where the state laws would "impair the exercise of authority, enumerated or incidental under the NBA" they are preempted. *Id.*; *see* U.S. Const. art. VI, cl. 2 (providing that "the Laws of the United States . . . shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding"). Thus, the issue is whether the NBA and its regulations preempt Green's claims pursuant to the principles of conflict preemption.

Charter One asserts that the claims are preempted because they all revolve around its collection of inactivity fees on gift cards, which is permitted by the NBA. It relies on cases that hold that certain state consumer protection statutes that attempt to limit the ability of national banks to impose fees conflict with, and therefore are preempted by, the NBA. In *Rose v. Chase Bank, N.A.*, 513 F.3d 1032 (9th Cir. 2008), the court held that the NBA preempts claims brought under California's Unfair Competition Law for failure to provide disclosures and unfair business practices in relation to charges and fees imposed on the use of convenience checks. *Id.* at 1038. In *SPGGC, LLC v. Ayotte*, 488 F.3d 525 (1st Cir. 2007), the court concluded that New Hampshire's Consumer Protection Act, which regulated the terms and conditions of gift cards, conflicted with the CPA because it significantly interfered with the national bank's authority to issue gift cards with expiration dates and administrative fees. *Id.* at 533. The reasoning of these cases, along with the statutory and regulatory scheme at issue, seems to compel a conclusion that

4

any claim involving collection of inactivity fees on gift cards is preempted. However, Green contends Charter One's conduct as to the details of its operation of the gift card program is not regulated by the OCC and that any claims regarding specific disclosures and the amount of fees are not, therefore, subject to preemption.

A similar argument to the one Green raises was rejected in *Ayotte*. *See* 488 F.3d at 533 (noting that the state attorney general argued that preemption did not apply because neither the NBA nor OCC regulations specifically require gift cards to have expiration dates or administrative fees). The *Ayotte* court reasoned that "[t]he Supreme Court has directly answered this argument by holding that conflict preemption is implicated in situations beyond those where a federal law requires something that a state law prohibits." *Id.* (citing *Barnett Bank of Marion County, N.A. v. Nelson*, 517 U.S. 25, 35 (1996)). Green cites an OCC Bulletin regarding disclosures on gift cards in support of his argument, but its import is unclear given that it was issued in August 2006, long after Green used his gift card. He does not explain how, when a regulation authorizes a national bank to charge fees to its customers, it does not preempt state claims relating to the authorized fees and he does not attempt to distinguish authority that holds to the contrary. *See SPGGC, LLC v. Blumenthal*, 505 F.3d 183, 189 (2d Cir. 2007) (noting that the "OCC regulations appear to permit, or at least not to prohibit, the attachment of . . . dormancy or inactivity fees to [gift] cards."). Thus, the court rejects as unpersuasive Green's argument that claims regarding the specifics of a national bank's operation of its gift card program are not vulnerable to preemption.

Green next states that he "does not take issue with the fees and charges and forfeitures that [Charter One] may charge so long as there is complete and adequate disclosures in order that the parties to the transaction have had a meeting of the minds rather than to have been the

5

victims of a scam." Pl.'s Resp. in Opp'n to Def.'s Mot. to Dismiss at 6. Green's theory of the case seems to be that: (1) the disclosures on the gift card were insufficient to place him on notice of the terms of the contract he was entering into when he used the card; and (2) Charter One had no contractual authority to deduct inactivity fees from the balance of the gift card before Green used the gift card and entered into a contractual relationship with the bank.[3] Thus, the argument is intertwined with the issue of whether a contract that provides for inactivity fees governs the terms of the parties' relationship, as Charter One contends.[4]

Charter One argues that when Green used the gift card,[5] he agreed to pay all the fees charged by Charter One, including the monthly $2.50 inactivity fee. However, this argument is not dispositive at such an early stage in the case where Green advances a contrary theory of the case and evidence is needed to clarify when the contract was formed and when fees were deducted. Thus, the issue can be framed as whether the NBA preempts a claim grounded on allegations that suggest that a national bank is deducting fees from a gift card before a

---

[3] A generous reading of the complaint allows for such a theory. *See, e.g.*, Am. Class Action Compl. ¶¶ 6 (alleging the gift card holder agrees to all terms of the agreement with Charter One by using the card); 11 (alleging a lack of disclosures on the gift card regarding inactivity fees); 13 (alleging non-receipt of any terms and conditions other than those on the gift card itself); 15 (alleging first use of the card on or about December 20, 2005 and being informed of insufficient funds on the card); 18 (alleging that the fees had been "previously debited by [Charter One]).
[4] The Amended Class Action Complaint alleges that the Charter One MasterCard® Gift Card Cardholder Agreement (the "Agreement") is attached as Exhibit A. *See* Am. Class Action Compl. ¶ 13 (discussing Green's non- receipt of the Agreement). It is not. *See* docket no. 28. However, Charter One attaches a copy of the Agreement to its motion to dismiss. Because the complaint makes allegations regarding the Agreement and purports to attach it as an exhibit, the court may properly consider it.
[5] Charter One points to language in the cardholder agreement that provides that a holder agrees to the terms of the Agreement by signing or using the card. However, the card itself provides that a customer accepts by using the card and Charter One frames its arguments as though the use of the card was the defining act. At this stage in the litigation, the court will construe the ambiguity as to the mode of acceptance against Charter One, as it drafted the contract terms, and assume that no contract was formed until Green used the card. *See Liautaud v. Liautaud*, 221 F.3d 981, 986 (7th Cir. 2000) (internal citations omitted).

contractual relationship has been formed that authorizes such deductions. Green does not develop, and Charter One does not reply to, this implicit issue, but given its dispositive nature, the court considers it.

A plain reading of the relevant OCC regulation discloses that it authorizes fees *to customers*. 12 C.F.R. § 7.4002(a). The OCC has clarified that "[a]s used in section 7.4002(a), 'customer' simply means any party that obtains a product or service from the bank." Comptroller of the Currency, Interpretive Letter No. 934 at 2 n.5 (Aug. 20, 2001), *available at* http://www.occ.treas.gov/interp/may02/int934.pdf. Drawing all reasonable inferences in favor of Green, he "obtained a product or service from the bank" only upon use of the gift card and, therefore, he became a "customer" in December 2005 after inactivity fees had been deducted from the balance of the gift card. With these allegations, namely where fees were charged to a non-customer without contractual authorization, it is not obvious that Green's claims are in irreconcilable conflict with, and therefore preempted by, the NBA or associated regulations or that "compliance with the state [law] would frustrate the purposes of the federal scheme." *See Pac. Capital Bank, N.A. v. Connecticut*, 542 F.3d 341, 351 (2d Cir. 2008) (discussing whether a state statute limiting the fees that national banks could charge on refund anticipation loans was in conflict with the NBA). Consequently, the court does not find the claims preempted at this early stage in the litigation. The court therefore turns to Charter One's remaining arguments for dismissal of the individual claims for: (1) breach of fiduciary duty; (2) constructive trust; (3) unjust enrichment; and (4) violations of state consumer protection statutes.

Charter One argues that Count I, breach of fiduciary duty, should be dismissed as barred by the economic loss doctrine and because no fiduciary relationship exists, and Count II should be dismissed because "constructive trust" is a remedy, not a cause of action. In response, Green

7

asserts that a fiduciary relationship was created between the purchaser of the gift card and Charter One when the purchaser gave the bank money to hold in trust for the benefit of Green. In support, Green cites *Mitchell v. Simms*, 398 N.E.2d 211, 215 (Ill. App. Ct. 1979), a thirty-year old case dealing with an action by an executor of a decedent's estate against the conservator of the estate of the decedent's brother and against jointly-owned corporations to impose a trust, and *Anderson v. Lybeck*, 154 N.E.2d 259, 262 (Ill. 1958), a fifty-year old case providing a black-letter legal definition of a constructive trust. Neither case provides sufficient support for Green's argument or rebuts Charter One's argument that the balance on the card was a general liability of the bank and that, therefore, a creditor-debtor relationship, not a fiduciary one, was established.[6] *See Pommier v. Peoples Bank Marycrest*, 967 F.2d 1115, 1119 (7th Cir. 1992) (observing that "a debtor-creditor relationship is not a fiduciary relationship as a matter of law"). Certain facts could establish that a fiduciary relationship existed between Green and Charter One. *See id.* (requiring a plaintiff to "show that he placed trust and confidence in [the bank that loaned him money] and that [the bank] gained influence and superiority over him" to demonstrate a fiduciary relationship). However, Green does not sufficiently allege facts that raise his fiduciary duty claim above the speculative level.[7] Moreover, it is hard to see how the constructive trust claim

---

[6] Charter One asserts that Ohio law governs the resolution of this question pursuant to the Agreement. However, a threshold question is whether the parties entered into a valid contract containing a choice of law provision. *See, e.g.*, *DeJohn v. The .TV Corp. Int'l*, 245 F. Supp. 2d 913, 917-18 (N.D. Ill. 2003) (finding that a contract between the parties was valid before applying Illinois choice-of-law rules to respect the choice of law provision in the contract). Given that Green is arguing that no contract was formed, no assumption regarding the parties' choice of law can be made at this stage. The court therefore relies on the law of the forum in which the gift card was purchased and used: Illinois. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496-97 (1941) (providing that a court applies the choice of law rules of the state in which it sits in a diversity case); *Purcell & Wardrope Chartered v. Hertz Corp.*, 530 N.E.2d 994, 1001 (Ill. App. 1988) (noting that Illinois follows the "most significant relationship test" for deciding among conflicting laws).

[7] Green alleges that Charter One was a trustee of the money backing the gift card, but this is a

8

can survive without a predicate claim for breach of fiduciary duty.  Consequently, Counts I and II are dismissed.  The court does not reach Charter One's arguments regarding the economic loss doctrine or whether constructive trust is a viable separate cause of action.

Next, Charter One offers two arguments in support of dismissal of Green's unjust enrichment claim.  Green offers little useful argument in response.  Nevertheless, both bases for dismissal of the claim advanced by Charter One are so obviously without merit that the claim survives dismissal.  First, Charter One argues that a claim for unjust enrichment fails where the parties entered into an express contract.  This is a correct statement of the law, but the argument cannot succeed at such an early stage where Green's theory of the case is that no contract was formed at the point the inactivity fees were withheld.  Second, Charter One argues that Green is not the proper party to assert the claim.  It cites to *Dawson v. Blockbuster, Inc.*, No. 86451, 2006 WL 1061769 (Ohio Ct. App. Mar. 16, 2006), which holds that a gift card recipient could not state a claim for unjust enrichment because under Ohio law, "the party asserting the claim [must] demonstrate that 'the claimant conferred a benefit upon the recipient.'" *Id.* at *5.  Charter One's reliance on Ohio law, the governing law according to the cardholder agreement, is misplaced when the claim is quasi-contractual, and cannot, by its very nature, be governed by the terms of the agreement.  Moreover, the law of Illinois explicitly recognizes that an unjust enrichment claim may be brought where "the plaintiff is seeking recovery of a benefit that was transferred to the defendant by a third party."  *See HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 545 N.E.2d 672, 679 (Ill. 1989) (noting that retention of the benefit is unjust where "the plaintiff for some reason had a better claim to the benefit than the defendant").  Thus, Charter One's motion

---

legal conclusion that the court is not required to accept.  *See* Am. Class Action Compl. ¶¶ 20-22.

to dismiss Count III is denied.[8]

Finally, Charter One argues that the consumer protection statutory claims must fail because the allegations do not meet the heightened pleading standards for such claims. *See* Fed. R. Civ. P. 9(b) (requiring a party to "state with particularity the circumstances constituting fraud or mistake"). Green does not offer any argument in response. "[W]hen presented with a motion to dismiss, the non-moving party must proffer some legal basis to support his cause of action. The federal courts will not invent legal arguments for litigants." *Stransky v. Cummins Engine Co.*, 51 F.3d 1329, 1335 (7th Cir. 1994). Green's failure to respond permits an inference of acquiescence and "acquiescence operates as a waiver." *See Wojtas v. Capital Guardian Trust, Co.*, 477 F.3d 924, 926 (7th Cir. 2007) (upholding a district court's dismissal of claims in light of the plaintiff's failure to respond to statute of limitations arguments in a motion to dismiss)). Thus, Count IV is dismissed.

### III. CONCLUSION

For the reasons stated above, the defendant's motion to dismiss the amended class action complaint is granted in part (as to Counts I, II, and IV) and denied in part (as to Count III only). If the plaintiff wishes to amend, he may do so within 14 days. If no amendment is filed, the defendant shall answer Count III within 28 days of this order; if an amendment is filed, the defendant shall answer or otherwise plead 30 days after the filing of the amended pleading.

                                        ENTER:

                                        /s/
                                      JOAN B. GOTTSCHALL
                                      United States District Judge

DATED: February 25, 2009

---

[8] Unjust enrichment claims may sound in tort or quasi-contract. The complaint does not make clear which theory Green contemplates and the court does not reach the issue of whether the claim, if based on a fraud theory, is pled adequately.